Carr, J.
I am of opinion that the chancellor was right in dissolving the injunction: whether he ought ever to have granted it, is a much more doubtful question. The doctrine of contribution between co-sureties, has been much discussed. It is clear, that if different persons are sureties for the same debt, or for the performance of the same duties, each will be made, in equity, to contribute, though they be bound by different bonds, and though they knew nothing, at the time, of the obligations of each other. But then, they must be sureties to the same extent, and for the same debt or duty. It is equally clear, that if there be one set of sureties bound for a debt, and then the obligee takes another bond, as collateral and supplemental security, these last obligors binding themselves to pay if the principal and sureties in the first bond fail, this bond will bind them no further than they have contracted. This is of the very essence of the contract -, and the case of Craythorne v. Swinburne, 14 Ves. 160. is express to this point. Nor is the taking such second bond a fraud upon the obligors in the first: it does not increase their burden, or any way change their situation: they agreed each to execute the bond, and look to their principal and associates for safety. What is the case here ? Wigginton applied to Lane to become his deputy, and stated that he could give certain sureties: Lane agreed to take the bond with those sureties: the bond was prepared with the six names in the body, Harrison's last, and with six seals : it was executed by the other five, and in this situation, was presented to Harrison. Nothing was said to him of additional sureties; the very form of the bond shewed him that he was the last to execute it. He did execute it, and thereby bound himself jointly and severally with the others, to be liable for all defaults of the deputy. Notwithstanding this, I admit, that if another bond had been afterwards taken with other obligors, bound for the same thing and in the same manner, Harrison, on paying money for the deputy’s *418 delinquencies, would have had a right to call on these sub- . „ ... . , , „ sequent sureties for contribution. But, in the case before us, there is the most satisfactory proof, that the memorandum indorsed on the second bond, shewing that this bond was a supplemental security, formed a part of the agreement on which the bond was signed, and was executed at the same time. This memorandum is a part of the bond, as well as of the agreement, and must be taken as if incorporated with it. Even if there had been no memorandum, parol proof of the agreement (of which there is enough in the record) ought, I think, to have been received, and for this, the case before cited is express authority. I am clear, therefore, that the decree should be affirmed.
Cabell, J.
If the sureties in the second bond were bound for the same thing for which the sureties in the first bond were bound, they would be liable to contribution, although their engagement was made at a subsequent time, by a different instrument, and even without the knowledge of the first bond. But the memorandum indorsed on the second bond, is to be considered as a part of the bond itself; and the bond, thus modified, shews clearly, that they were bound for a different thing. They did not, like the sureties in the first bond, bind themselves absolutely, for all the acts of Wigginton, but for such only as the sureties in the first bond should fail to make good. This is proved also, by the parol testimony, which is admissible in a case like this. The sureties in the second bond were not, therefore, co-sureties with the sureties in the first, but were sureties for them. The doctrines of the law, on this point, are well explained in Craythorne v. Swinburne. The decree should be affirmed.
Tucker, P.
The appellant asks, upon the facts set forth in his bill, relief against the sheriff, or a decree for contribution against the sureties in the second bond. If, as is alleged, the memorandum on that bond was executed at the time the bond itself was entered into, it is difficult to perceive upon *419 what principle the plaintiff can expect to charge the sureties . 1 r , , . „ .. . . , therein bound. The doctrine of contribution, it is true, extend to parties who are bound by different instruments, provided they are all sureties for the same person and the same thing. But it does not therefore follow, that, by the very terms of their engagement, the sureties in a separate bond may not make themselves responsible only sub modo, and place themselves out of the reach of the principle of contribution. “Whether,” says lord Eldon, “contribution depends upon a principle of equity, or is founded in contract, it is clear, a person may, by contract, take himself out of the reach of it”—“ The question is, Whether the meaning of the instrument is, that the party will be a co-surety; or that the surety in the former instrument is to be considered a principal”—“ If the party, not constituting himself co-surety, engages only to pay, if the creditor cannot get payment from the other sureties, he withdraws himself by his contract from the reach of the principle, and the plaintiff (the surety) cannot complain, as the transaction is without his knowledge, that the defendant (the supplemental surety) bound himself only to the extent he thought proper.” In a subsequent part of the same case, lord Eldon reiterates the remark, that whether the doctrine rests “ upon contract or a principle of equity, it is clear, that a party may take care by his engagement that he shall be bound only to a certain extent. That is proved by the case of Swain v. Wall, 1 Rep. in Ch. 80. when the engagement being to pay in thirds, that contract was held to take them out of the principle that would have required a moiety, and also by the case of Deering v. The Earl of Winchelsea, 2 Bos. & Pull. 270. where it was admitted, that lord Winchelsea, though liable as a surety, had by contract withdrawn himself from a liability beyond £ 4000his bond having been for that sum only, while the other bond was for £ 10,000. Lord Eldon proceeds—“If therefore by his contract a party may exempt himself from the liability, or from that extent of liability in which, without a special engagement, he would be involved, it seems to follow, that he may, by special engagement, con *420 tract so as not to be liable in any degree. That leads to the * ® true ground, the intention of the party to be bound, whether as a co-surety, or only if the other does not pay; that is, as surety for the surety, not as co-surety with him." Pursuing these principles, and after having carefully considered the case in 2 Freeman 97. which was cited by the counsel, and has also been relied upon here, and having found that ease unsupported by the register, his lordship rejected the claim to contribution, which was set up by the plaintiff in the case of Craythorne v. Swinburne, 14 Ves. 160. That case is singularly strong in its application to the case at bar.
It is not necessary to go into a philological examination of the memorandum on the second bond. I am satisfied, that the object of it was to absolve the supplemental sureties, unless the high sheriff could not be able to get indemnity from the sureties in the first bond. They had a right to bind themselves, or to refuse to be bound altogether. They, had, therefore, a right to say how far they would be bound; and their obligation cannot be carried farther. It is obvious they designed only to guaranty the sufficiency of the former sureties, and they were thus (to use the language of lord Eldon) 11 not co-sureties with them, but in truth sureties for them." The question, then, which it is most important to answer, refers itself to the execution of this memorandum. I shall only say, that I am satisfied it was contemporary with the execution of the bond. The nature of the transaction proves it; and so does the improbability that Lane would have signed it afterwards, when the obligors were in his power, if he declined to do so when they were not. The fact, that the bond with its indorsement was among the records of the court (for the copies are certified by the clerk) sustains the conclusion, and fortifies the presumption that this memorandum was made when the bond was executed. So we must take it, as the contrary has not been established by proper and adequate testimony. Upon the whole, I am satisfied there can be no pretence for charging the sureties in the second bond with any part of Wigginton’s defalcations.
*421 Then, as to the high sheriff: it cannot be denied, that . /-it Harnson executed the first bond without any fraudulent inducements held out to him by Lane; and I think it cannot be denied, that when the sheriff and Wigginton his deputy qualified, the bond was a valid bond as to Harrison. It had been executed by him absolutely, and without expectation or assurance that other sureties would join. His name was last, and he signed opposite to the only remaining seal; and it was more than a month after, that the second bond was executed. The bond then was once a good and valid bond. How then has Lane forfeited his rights under it ? Did he forfeit them by taking additional security for his own protection 'l I apprehend not. The very doctrines we have been considering, shew that the creditor may take supplemental security, and security too that is only to be responsible in the last resort. The case of Craythorne v. Swinburne was just that case. But no authority can be necessary to establish a principle so plain. It seemed to be supposed, that he ought not to have taken the supplemental security with the qualification contained in the memorandum. But, non con-slat that he could have got the supplemental security without it; and was he to forego the additional security altogether, merely because he could not prevail on the parties to be co-sureties with, instead of being mere guarantors for, the prior sureties ?■ I think not. It was then said, that he fraudulently suppressed his knowledge of the insolvency of the four first sureties, and his want of confidence in Wigginton. There can be no fraudulent suppression, where there is no obligation to give information. Now, I take it that when a man joins with others in a bond, it is his business to look to the conduct of the principal and the solvency of the co-sureties : it is not the business of the creditor; and though it may be benevolent and kind in him to put his surety on his guard, I am yet to learn that it is a duty which the law imposes.
Upon the whole, I am well satisfied, that the case has been rightly decided, and that the decree should be affirmed.
Decree affirmed.