### CANDLER & HART *vs.* ROSSITER.

Where a plaintiff declares in *assumpsit* for *money paid, &c.* omitting the ordinary *super se assumpsit*, and instead thereof stating the circumstances of his case—that he bought a quantity of fish for the purpose of shipping it to a foreign port; that the defendant put on board of the same vessel in which he had made his shipment an equal quantity of fish, for the purpose and with the intent of creating a joint adventure, so that the parties should share in the profit or loss; and that the fish was so damaged at sea, or otherwise, as that after its arrival at the port of destination, it was sold at a loss, the whole of which the plaintiff individually sustained and paid, without having received any part thereof from the defendant, whereby the plaintiff had sustained damage to the amount of $500 ; *it was held*, on writ of error, after verdict for the plaintiff in the court below, that the declaration was bad in not stating *a contract* or *agreement* with sufficient distinctness, in not alleging a *promise* by the defendant, and in not setting forth a *consideration ;* and the judgment of the court below was accordingly reversed.

It is a general rule in pleading in *assumpsit,* that it must be stated that the defendant *undertook* and *promised, &c.* or *something equivalent* thereto, or the declaration will be held bad, even *after* verdict and judgment.

When the declaration contains two counts, one good and the other bad, and there is a general verdict, the judgment will be reversed, but a *venire de novo* will be awarded.

On a writ of error, after a trial and verdict for the plaintiff, it is too late for the defendant to object that the subject matter of the suit was a copartnership transaction between him and the plaintiff.

ERROR from the New-York common pleas. Rossiter sued Candler and Hart, and declared against them for that whereas the defendants, on, &c. at, &c. were indebted to the plaintiff in the sum of $500, being so much money paid, laid out and expended by the plaintiff for the use of the defendants ; *for that whereas* the plaintiff, by means of one E. C., his agent, did purchase from the defendants a certain quantity of fish, for the purpose of shipping the same in the schooner *Flos,* to the port of Vera Cruz, in South America, there to be disposed

of for the benefit and advantage of the plaintiff; and *whereas* the defendants did, at the time of the purchase of the fish, put up, prepare and put on board the said schooner a quantity of fish equal to that purchased by the plaintiff, in common with the fish shipped by the plaintiff, and for the express purpose, and with the express and actual intention of dividing the money arising from the whole of the said fish, when sold, for the mutual benefit and advantage of the plaintiff and defendants, of profit and of loss, share and share alike ; that is to say, if the whole of the fish should be sold at a profit, that such profit should be equally divided between the plaintiff and the defendants; and if the whole of the fish shipped on board the schooner *Flos* should be disposed of and sold at a loss, that then the plaintiff and the defendants should sustain and pay the loss, by sales or otherwise incurred—the said plaintiff thereof the one half, and the said defendants the other ; and *whereas* the fish so shipped at the common risk and for the mutual benefit and advantage of the plaintiff and the defendants, as aforesaid, was so damaged at sea or otherwise, as that after the arrival of the schooner at Vera Cruz, it was there sold at a loss, the whole of which the plaintiff individually sustained and paid, without having received any part thereof from the defendants ; whereby the plaintiff hath sustained damage to the amount of $500. There was a second count in the declaration, substantially like the above. The defendants pleaded *non assumpsit*. The cause was tried and the plaintiff obtained a general *verdict* for $154 68, on which judgment was entered. The defendants sued out a writ of error.

*H. Bleecker*, for the plaintiffs in error, insisted that the declaration was bad, in not alleging a *promise* by the defendants. *Gould's Treatise on Pl.* 73, § 42, 44, 75. *Lawes on Pl.* 88, 9. 3 *Mass. Rep.* 160. And if a promise could be inferred, the declaration was still defective in not setting forth a *consideration* to support it. 1 *Saund.* 264, *n.* 1. 3 *T. R.* 653. 7 *Johns. R.* 88. 4 *Barn. & Cresw.* 345. He further insisted that should it be conceded that a valid agreement existed to unite in a shipment at common risk, the action could not be sustained ; for then a *partnership* was shewn, and a suit at law could not be

sustained until after a settlement of the accounts of the adventure, and a promise by the defendants to pay the balance. Nor could the plaintiff sue for *contribution*, as he did not aver that he had discharged a joint liability. The errors relied on are not cured by the verdict. 2 *Saund.* 137, *b.* 2. *Dougl.* 679. 1 *T. R.* 141.

*I. L. Wendell,* for the defendant in error. The declaration is informal, but it is sufficient after verdict. The plaintiff declares for money paid, laid out and expended for the use of the defendants, and states the agreement between him and the defendants, under which the liability accrued. The allegation of a *promise* would have been mere matter of form, and the omission could have been taken advantage of only by *demurrer*; for there is no rule better settled than that where there is a defect, imperfection or omission in a pleading, and that whether *in substance* or *in form*, which would have been a fatal objection on demurrer, yet if the issue *necessarily requires proof* of the facts defectively or imperfectly stated or omitted, without which the judge would not have directed, or the jury would not have given a verdict, the defect is cured by the verdict. 2 *Archbold's Pl.* 264, *and cases there collected.* This is not the case of a *defective title*, as would be the omission to state a *demand and refusal* of the acceptor in an action against the endorser of a bill of exchange ; here the agreement is stated, the liability is charged, and a promise need not be alleged ; it is enough if the evidence justified the jury in finding a promise. After verdict, it is too late to object that the subject matter of the suit was a partnership transaction, 18 *Johns. R.* 245 ; besides, it was a single adventure, and not a partnership concern, and an action at law may be sustained in such case, either to recover a balance or to enforce contribution. 5 *Wendell*, 274. 8 *Taunt.* 443. 2 *Bos. & Pul.* 270. 1 *East*, 20. 12 *Mass. R.* 34, 76, 539. 13 *East*, 7. 1 *Powell on Cont.* 328.

*By the Court,* SUTHERLAND, J. This is a writ of error to the court of common pleas of the city and county of New-York. It is in the nature of a motion in arrest of judgment,

as the errors relied upon are the substantial defects of the declaration, which contains two counts, both of which it is contended are bad in substance.    They are both exceedingly informal, and the first, I am inclined to think, is too imperfect to be sustained, even after verdict.    It sets forth no promise, agreement or contract whatever, on the part of the defendants, and contains no express averment of any kind.    It states no contract or agreement on the part of the defendant, that the fish should be sold in common, and the profit equally shared, or the loss equally borne by the parties ; it merely states, and that by way of recital, that the defendants purchased and put on board the same vessel a quantity of fish, equal to that of the plaintiff, to be sold in common therewith, for the purpose and with the intention of dividing the money arising from the sale thereof, profit or loss.    Admitting such to have been their intention, it does not amount to an agreement ; and if it did, no consideration whatever is stated to support it.    It is not averred that the purchase of the fish by the plaintiff was in any manner induced by or connected with the acts or intentions of the defendants, in relation to their portion of the fish. It is not shown how or in what manner it happened that the whole lot of fish did not sell for enough to pay the charges at Vera Cruz, nor by whom the fish were sold, nor how the plaintiff was compelled, or became liable to pay the deficiency.    It is not shown that he or his agent went with the fish to Vera Cruz, and there disposed of them, and in that manner became responsible for the charges, &c.

It has been held that where the contract declared on is founded on a legal liability and implied therefrom, it is sufficient to state such liability, without alleging formally that the defendant promised, as in assumpsit, *on a bill of exchange.* There, when it is shown by the declaration how and in what manner the defendant became a party to the bill, and that he was duly charged, &c. his legal liability is fixed and certain, and the law will imply a promise to pay it, without its being expressly averred.    1 *Salk.* 138.    5 *T. R.* 145.    1 *Chitty's Plead.* 299.    But, as a general rule in assumpsit, if the declaration does not state *that the defendant undertook and promised the plaintiff,* &c. or something equivalent thereto, it will be held

bad, even after verdict and judgment. *Lawes on Plead.* 88. This was expressly adjudged in *Buckler* v. *Angell*, 1 *Lev.* 164. 1 *id.* 246. 7 *Ld. Raym.* 124. The declaration in that case stated, that whereas the plaintiff had procured one Woodward, at the request of the defendant, to surrender a lease, the defendant, *solvere vellet*, would pay £10. On non-assumpsit pleaded, and verdict for the plaintiff, judgment was arrested, because no promise was laid, and therefore no issue joined ; and this case was recognized and followed as authority in *Lea* v. *Welch*, *Lord Raym.* 15, 16, 1 *Geo.* 2 ; a case precisely similar, except that the judgment was by default, and not upon verdict. It is probable that at this day the defect in those declarations would be considered a clerical omission, as the sentence in each was obviously imperfect without the words *undertook and promised—super se assumpsit,* &c. ; but they mark strongly the indispensable importance of the allegation that *the defendant promised,* &c. Mr. *Lawes,* whose treatise on pleading in the action of assumpsit is of the highest authority, seems to consider the omission of the allegation as fatal, after verdict. This doctrine, upon the authority of the preceding cases, was also admitted by the supreme court of Massachusetts, in 3 *Mass. R.* 160 ; *opinion of Sedgwick, J., page* 176. Judge *Gould,* in his valuable treatise on pleading, speaking on the subject of direct and positive averments, says, the rule appears to be, that all those facts which are directly denied by the terms of the general issue, or which may, by the established usage of pleading, be specially traversed, must be averred *in direct and positive terms.* Thus, in assumpsit the *promise* must be stated in terms direct and positive, because the general issue, *non assumpsit,* purports to be a direct denial of the promise. *Gould's Treatise on Plead.* 73, § 42, 44, 75. Considering, therefore, that no contract or agreement whatever is distinctly stated, nor any promise by the defendant, nor any consideration for a promise, I think the judgment must be arrested. These defects are not cured by the statute of jeofails ; it is the case of a defective title, and not of a good title defectively set out.

The second count states, with somewhat more precision, a contract or agreement between the parties ; but it is unneces-

UTICA,
July, 1833.

Mitchell
v.
Bristol.

sary particularly to consider it, as it is well settled that if either count is bad, the judgment is erroneous and must be reversed.

The case of *Smith* v. *Allen,* 18 *Johns. R.* 245, decides that after a trial and verdict for the plaintiff, it is too late for the defendant to object that the subject matter of the suit was a copartnership transaction between him and the plaintiff. The objection should have been made at the trial.

Judgment reversed, and *venire de novo.*