# Charleston.

BURTON & CO. *v.* HANSFORD *et al.*

(Absent, JOHNSON, JUDGE.)

Decided May 1, 1877.

1877.
January Term.

1. It is a general rule in pleading, that whatever facts are necessary to constitute the cause of action must be directly and distinctly stated in the declaration; but a general *indebitatus assumpsit* count in a declaration, concluding, "*And whereas,* the defendants, afterwards, to-wit: on the day and year aforesaid, in consideration of the premises, then and there promised to pay the said sum of money to the plaintiffs on request; yet they have disregarded their promises, and have not paid the same, or any part thereof, to the plaintiffs' damage $1,000; and therefore they bring suit, &c.," is, nevertheless, good on general demurrer.

2. A stranger who endorses negotiable paper at the time it is made, is *prima facie* liable to the payee as original promissor or as guarantor, as the payee may at any time elect. But it may be shown by parol evidence that he intended to bind himself only as guarantor, or even as second endorser; and if so shown by such evidence, he can only be held bound according to the original understanding.

An appeal operating as a *supersedeas* granted upon the petition of James F. Hansford, from a judgment of the circuit court of Kanawha county, rendered on the 11th day of June, 1874, in a suit then pending in said court, wherein Robert B. Burton, William P. Burton and Charles Peniman, partners under the firm name of Gideon Burton & Co., were plaintiffs, and R. H. Lee and James F. Hansford, were defendants.

Green, President, who delivered the opinion of the Court, gives a sufficient statement of the case.

The Hon. Joseph Smith, Judge of the seventh judicial circuit, presided below.

*William H. Hogeman*, for plaintiff in error, referred to the following authorities:

4 Rob. Pr., 548; *Bishop v. Hayward*, 4 Durnf. & E., 471; Story on Promissory Notes, §480; *Bacon v. Brinham*, 37 N. Y., 614; *Hall v. Newcomb*, 7 Hill, 416; 2 Rob. P., 231; *Spiel v. Gilman*, 1 Comstock, 221, 231; *Herrick v. Carman*, 12 Johns. 160; *Tillman v. Wheeler*, 17 Johns., 328; *Fegenbush v. Lang*, 28 Pa. St., 194; *Farmers' Bank, et al. v. Vanmeter*, 4 Rand., 553; *Chalmers, Jones & Co. v. McMurd*, 5 Munf., 252; *Hogan v. Davis*, 8 Gratt., 4; *Bank of the United States v. Beirne*, 1 Gratt., 265.

*C. E. Doddridge*, for plaintiff in error, referred to the following authorities:

2 Tuck. Com., 99; 1 Bouv. L. D., 136; 2 N. H., 289; Hardin, 225; 2 Bouv. L. D., 417; *Syme v. Griffin*, 4 H. & M., 277; 4 Munf., 260; *Cooke v. Simms*, 2 Call., 39; 6 Munf., 506; 2 Chitty Pl., 115; 1 Chitty Pl., 293-4; Edw. on Bills, 273-4, 610; 19 Johns., 159; 1 Comstock, 321; *Pitts v. Congdon*, 2 Comstock; 7 Hill, 416, 426; 4 Munf., 279; 1 Patt. & H. (Va.), 228; Freeman on Judg't, §231, 232, 235; 2 Am. L. Cases, 322; 2 Leigh, 195; 7 Leigh, 83; *Ellis v. Brown*, 6 Barb., 293.

*W. Molohan* and *James M. Laidley*, for defendants in error, referred to the following authorities:

*Silver v. Henderson*, 3 McL., 165; 7 Wheat, 75; 2 McL., 213, 235; Edw. on Bills, 679; 28 Pa. St., 189; 6 McL., 496; *Rey v. Simpson*, 22 How., 350; *Cook v. Weightman*, 1 Cr. C. C., 449; *Offutt v. Hall*, *ibid*, 504; *McComber v. Clark*, 3 Cr. C. C., 6.

1877.
January Term.

Burton & Co.,
v.
Hansford et al.

GREEN PRESIDENT, delivered the opinion of the Court.

This was an action of *assumpsit* brought in the circuit court of Kanawha county, by Gideon, Burton & Co., against R. H. Lee and James F. Hansford, based on the two following notes:

"$236.98.        COALSMOUTH, W. VA., Nov. 11, 1872.

"Sixty days after date I promise to pay to the order of Gideon Burton & Co., $236.98 at First National Bank, Charleston, W. Va.

"Value recived, with eight per cent. interest after maturity.    No. 375.                            R. H. LEE.
    "Due Jan. 10–13, '72.
                        "Endorsed—JAMES F. HANSFORD."

$235.00.        COALSMOUTH, W. VA., Nov. 11, 1872.

"Ninety days after date I promise to pay the order of Gideon Burton & Co., $235.00 at First National Bank, Charleston, W. Va.

"Value received, with eight per cent interest after maturity.
    "No. 275.                            R. H. LEE.
    "Due 9–12, '72.
                        "Endorsed—JAMES F. HANSFORD."

The writ was served on Hansford alone.   The declaration contained four counts, the second, third and fourth of which were special counts, and the first a general count for the price and value of goods bargained and sold, for the price and value of work done, for money lent, for money paid, laid out and expended by plaintiff, and for money due to the plaintiff from the defendants on an account stated.    The special counts set out these notes, avering in some of them that Hansford had signed these notes as security, and in another that he endorsed them and they had been protested.   In the first count there is no separate allegation in any form of a promise by the defendant to pay the plaintiffs, and in the three

special counts there is no such averment, except that the notes are recited in which there are such promises. The declaration then concludes "and *whereas* the defendants afterwards, to-wit: on the day and year aforesaid, in consideration of the promises respectively, then and there promised to pay the said several moneys respectively to the plaintiffs on request. Yet they have disregarded their promises, and have not paid any of said moneys, or any part thereof, to the plaintiffs' damage $1,000, and therefore they bring suit." A proper bill of particulars was filed with the declaration. The defendant, Hansford, demurred to this declaration, and the court overruled the demurrer. And he then plead non assumpsit, and issue was joined, and neither party desiring a jury, by consent the case was submitted to the court for trial in lieu of a jury, and the court having heard the evidence found for the plaintiffs, and assessed their damages at $512.75, and rendered judgment therefor against said Hansford, with interest thereon from June 11, 1874, the date of said judgment; the defendant Hansford, filed two bills of exceptions, one was as to the admission of said two notes as evidence, the other was to the finding of the court for the plaintiffs upon the evidence in the case, and the refusal of the court to award him a new trial. From this judgment a writ of error and *supersedeas* has been awarded him.

The first question is, did the court err in overruling the demurrer to the declaration? It is claimed that the breach laid in the declaration is insufficient. It is "that the defendants have disregarded their promises and have not paid any of said moneys, or any part thereof." It is insisted that to this allegation should have been added "nor hath either of the defendants paid the said sums of money, or any of them, or any part thereof." But the averment "that they have not paid" is sufficient, for payment by one is payment by all. See Chitty's Pleadings, vol. 1, p. 334. The next objection urged to the declaration is that there is in it no suffi-

*1877.
January Term.*

Burton & Co.,
v.
Hansford *et al.*

cient allegation of a promise by the defendants to the plaintiffs and is an *assumpsit* by the defendants, is the very gist of this action, it must be alleged directly and positively, and not by way of recital merely, or after a " whereas," as is done in the declaration in this case.

It always has been, and still is a general rule in pleading, that whatever facts are necessary to constitute the cause of action should be directly and distinctly stated in the declaration, and such facts should not be left to be inferred from other facts distinctly alleged in the declaration, and arguments, inferences and matters of law should be excluded. *Lipe v. Becker*, 1 Denio, 568. Many illustrations of this general rule are to be found in the reports. It will suffice here to point out a few of such illustrations, taken from the Virginia reports, in actions similar to the present. Thus, in *Winston's exo'r v. Francisco*, 1 Wash., 187, it was held that in an action of *assumpsit*, the promise must be directly averred, and not by way of inference, and that the omission of such direct averment was not cured after verdict by the statute of jeofails, as it then was, though it provided " that a verdict shall cure the omission of an averment of any matter, without proving which, the jury ought not to have given such verdict." In that case the declaration was worded, " notwithstanding, promising the said money to the plaintiff to pay when required, the defendant hath not paid, though thereunto often times required." And it was held that this was no sufficient allegation of a promise. So in *Sexton v. Holmes*, 3 Munf., 566, the court set aside a judgment after verdict because no promise was sufficiently alleged in the declaration, though it did set forth that an article of agreement was made and entered into by the plaintiff and defendant, wherein and whereby the defendant was to do certain things, the failure to do which things was alleged. So in *Cook v. Simms*, 2 Call., 39, a demurrer to a declaration in assumpsit was sustained which averred that the defendant made a certain note in these words, setting forth the note

verbatim, and then alleged a breach of promise contained in the note, but which promise was not alleged in any manner except that it appeared in the note set out verbatim. The same was held in *Wooddy v. Flourney,* 6 Munf., 506, when the declaration was similar, and a judgment thereon was reversed after verdict.

Since the rendition of these decisions, the law has been modified in cases where there has been no demurrer to the declaration and judgment after verdict is sought to be recovered, because of such defects in the declaration. The Revised Code of 1819, having provided, " that after verdict, no judgment should be reversed for setting forth by way of recital, any matter which, ought to have been set forth by way of averment." See R. C. Vol. 1, chapter 128, §103, page 512. But when the declaration is demurred to, the law remains unchanged by any statute since these decisions were rendered, for the provision in our Code, " that a demurrer shall not be sustained unless there be omitted something so essential to the action or defense, that judgment according to law and the very right of the case cannot be given," Code of West Virginia, chapter 125, §29, was the statute law of the State when these decisions were rendered, being found in the Code of Virginia of 1792. See marginal reference, 1 R. C. of 1819, chapter 128, §101, p. 511. Elsewhere decisions similar to these Virginia decisions have been rendered. See *Muldrew v. Tappan,* 6 Mo., 276 ; *McNulty v. Collins,* 7 Mo., 69 ; *Wingo v. Brown,* 12 Rich., (S. C.) 279 ; *Benden v. Manning,* 2 N. H., 289 ; *Candler v. Rossiter,* 10 Wend., 487. But decisions have been rendered elsewhere, which are not consistent with some of these Virginia decisions. See *Avery v. The Inhabitants of Tyringham,* 3 Mass., 160; *Bell v. Hobbs,* Ga. Dec., 144; *Dole v. Weeks,* 4 Mass., 451. See also, Lord Rayon, 538, 1 Salk., 128 ; Carth., 508 ; 1 Stra., 224; 1 Taun. 217. Upon the question whether, it is a fatal defect for, a declaration to a state under a *quod cum* or after a " whereas," any fact necessary to constitute a cause of

action, there have been a number of Virginia decisions. The Court of Appeals of Virginia has decided that both in actions of trespass, and of trespass on the case for torts, such a mode of stating such a fact, is fatally defective on general demurrer to the declaration, or prior to the amendment of the statute of jeofails suits above quoted in the Revised Code of 1819, it was equally fatal even after verdict. See *Ballard v. Leavell*, 5 Call., 531; *Moore's adm'r v. Dawney, et al.*, 3 H. & M., 127; *Lomax v. Hord*, 3 H. & M., 271 and *Donaghe v. Rankin*, 4 Munf. 261. And these decisions are in accord with the old English authorites. See *Brigg v. Sheriff*, Cro. Eliz., 507; *Shearland v. Heaton*, 2 Bultstv., 214; *Wettenhal v. Sherwin*, 2 Lev., 206; *Amyon v. Heaton*, 2 Lev,, 206; *Dennis v. Eshley*, 2 Show., 447; *Hore v. Chapman*, 2 Salk., 636; *Dobbs v. Edmunds*, 1 Stra., 621. See also, 1 Rob. Rep., 55; 2 Lord Raym., 1413; 5 Bac., 345.

Afterwards, however, in the court of common pleas where the practice was to recite the writ in the declaration and make it a part thereof, it was held that such a defect in the declaration was caused by the writ. *Norman v. George*, 1 Fitz., G. 255; *Douglass v. Hall*, 1 Wils., 99; *White v. Shaw*, 2 Wils., 203; 2 Lord Raym., 1413 in margin. But this practice of the court of common pleas has not been followed in Virginia. But it will be observed that in all these cases in which it has been held a fatal defect in a declaration to state a fact necessary to sustain the action under *quod cum* or after a "whereas," were actions of tort, and though it may be difficult to assign any good reason for a difference, yet a distinction has been taken between declarations in tort and those based on contracts. Thus in an action of debt on a bond, the obligation of the defendant by the execution of the bond is a fact necessary to sustain the action, yet formerly it was the universal practice to state this under a *quod cum* or after a "whereas." And it is still the most usual way to draw a declaration on a bond. And no one has ever suggested that the declaration would be

for that reason fatally defective. And in England it has been recently held that in the common *indebitatus* counts in *assumpsit*, the promise which is the very gist of the action may be laid after a *quod cum* or stated after a *whereas*. *Ring v. Roxbrough*, 2 Cromp. & J., 420. The Virginia cases in actions of *assumpsit*, none of them, decide, expressly, that where in such an action a promise was stated after a *whereas* that the declaration would be fatally defective. In the cases of *Cook v. Simms*, 2 Call., 39; *Sexton v. Holmes*, 2 Munf., 566, and *Wooddy v. Flourney*, 6 Munf., 506, which most nearly resemble the case now before us, differ from it in this, that in those cases the declaration merely recited the note which contained the defendant's promise, and without more, alledged a breach of this promise. In the case before us, a further recital of the debt in one count, and of the note in the others, the declaration adds: "And whereas, the defendants afterwards, to-wit: on the day and year aforesaid, in consideration of the promises respectively, then and there promised to pay the said several moneys, respectively, to the plaintiffs, on request." These Virginia cases do not decide that this mode of stating the promise is fatally defective, and we have seen it is now held in England to be sufficient. As I am always unwilling to reverse a judgment upon technical grounds, unless forced to do so by well-established precedents, I think the declaration in this case should be held sufficient. The objectionable conclusion is copied from Conway Robinson's Forms, p. 554, and is there stated to be the form prescribed by the English Judges as the conclusion of the common counts in *assumpsit*. The circuit court, therefore, did not err in overruling the demurrer to the declaration.

The next inquiry is, whether the plaintiffs' declaration is sustained by the facts proven in the case. They were: the plaintiffs' agent was at the store of the defendant, in Kanawha county, West Virginia, to collect a debt he owed the plaintiff, resident of the State of Ohio; Lee

*margin:* 1877. January Term.

Burton & Co., v. Hansford *et al.*

1877.
January Term.

Burton & Co.,
v.
Hansford et al.

wanted an extension of time ; the plaintiffs' agent agreed to give it, if Lee would give him notes for the debt, endorsed in such a manner that the plaintiff could have them discounted in one of the local banks of Kanawha, if the plaintiffs wished so to do; and thereupon the plaintiffs' agent drew the two notes above copied, and Lee signed them and sent them by a clerk to the defendant, Hansford, with the request that he would endorse them, informing Hansford that if he would endorse them, the plaintiff would take them and give him (Lee) an extension of time on his debt. Hansford endorsed the notes and sent them back by Lee's clerk, and Lee then delivered them so endorsed to the plaintiffs' agent. On this state of facts, can the plaintiff sustain an action against Hansford? And if, by endorsing said notes, he incurred any obligation to the plaintiff, what was the character of this obligation? Was it a direct obligation as Lee's security to pay the amount of those notes, or was it a guarantee that Lee would pay them? If his obligation is direct as surety of Lee, the plaintiffs could recover from him on the general money counts, without using any diligence to make the debts out of Lee. On the other hand, if his obligation is only that of a guarantor, the plaintiff cannot recover except upon a special count, nor, as a general rule, without the use of proper diligence to make that debt out of Lee. If he is to be regarded only as an endorser of negotiable notes on which the plaintiffs were first to endorse their names, the plaintiffs could not recover of him at all, he being a second endorser, and they occupying the position of first endorsers. There is, perhaps, no legal subject upon which there has been a greater diversity of opinion than the question, what is the liability of a stranger to a note, who signs his name on the back thereof. In many of the States it has been decided that when a stranger signs his name on the back of a note before its delivery, he is *prima facie* liable, as though he was an original promisor. This is held to be law in Maine, *Childs v. Wyman*, 44 Me., p. 433; in Vermont,

*Sylvester v. Downer*, 20 Vt.; in Rhode Island, *Perkins'*

adm'r v. Barstow, 6 R. I., 505; in Massachusetts, 19
Perk., 260; in New Hampshire, *Currier v. Fellows*, 27
N. H., 366; in Indiana, *Cecil v. Mix*, 6 Ind.; in Michigan, *Rothschild v. Grix*, 31 Mich., 150; in Minnesota, *Peckham v. Gilman*, 7 Minn., 446; in Texas, *Carr v. Rowland*, 14 Texas, 275; and in Louisiana, *Collins v. Trist*, 20 La. R., 348. In other States it is held that a party so signing is *prima facie* not an original promisor, but a guarantor. It is so held in Illinois, *Webster v. Cobb*, 17 Ills., 459; in Connecticut, *Ransom v. Sherwood*, 26 Conn., 437; and in Ohio, *Greenough v. Smead*, 3 Ohio St. Rep., 415, but in these States there is a difference in the extent of the liability of such guarantor. In other States it is held that such an endorsement by a stranger of negotiable paper before the delivery to the payee does not *prima facie* make the party liable, either as an original promisor or as a guarantor, but only as an endorser, and therefore not liable to the payee, who occupies the position of a first endorser. This is held in New York, *Herrick v. Carman*, 12 Johns. R., 160; in Pennsylvania, *Fegenbush v. Lang*, 28 Penn. St., 194; in Iowa, *Fear v. Dunlap*, 9 Greene's R., 331. In California and Mississippi the payee of a negotiable note may sue a stranger who has endorsed it, his liability being *prima facie* that of an endorser, and not that of either a guarantor or original promisor, *Jennings et al v. Thomas*, 13 Smed. & Marshall, 616; *Pierce, &c. v. Thorndyke*, 5 Cal., 138. In New York, where the decisions have been very inconsistent, it is now held that where the note is not negotiable, and is endorsed by a third party before it was delivered to the payee, he may be held liable as an original promisor or as a guarantor; *Cromwell v. Hewitt*, 40 N. Y., 491. In Massachusetts now parol evidence would not be even admissible to show that a stranger who put his name on the back of a negotiable note when it was made did not thereby intend to bind himself as an original promisor. *Way v. Butterworth*, 108 Mass., 509.

1877.
January Term.

Burton & Co.,
v.
Hansford *et al.*

In the case of *Ray et al v. Sampson*, 22 How., 341,
Justice Cliford, in delivering the opinion of the courts
states the law thus: "When a promissory note, made
payable to a particular person or order, is first endorsed
by a third person, as in this case such third person is held to
be an original promisor, guarantor or endorser, according
to the nature of the transaction and the understanding
of the parties at the time the transaction took place.
If he put his name on the back of the note at the time
it was made, as surity for the maker, and for his ac-
commodation, to give him credit with the payee, or if he
participated in the consideration for which the note was
given, he must be considered a joint maker of the note.
On the other hand if his endorsement was subsequent to
the making of the note, and he put his name thereon at
the request of the maker, pursuant to a contract with
the payee for further indulgence or forbearance, he can
only be held as a guarantor.  But if the note was in-
tended for discount, and he put his name on the back of
it with the understanding of all the parties that his en-
dorsement would be inoperative until it was endorsed
by the payee, he would then only be liable as second en-
dorser in the commercial sense, and as such would clearly
be entitled to the priveleges which belong to such en-
dorsers."  It would be vain to endeavor to draw from
this great mass of conflicting decisions any general prin-
ciple which would meet with general support, I shall,
therefore, attempt no review of these cases, no good
would result from such review, and indeed, the review
of the decisions of a single State would in many in-
stances lead to the conclusion that the inconsistencies of
the decided cases were so great that no clear principle
could be deduced from them.   There are very few de-
cisions touching this question in Virginia or West Vir-
ginia.   All that we can do is to lay down reasonable
principles for our guidance in the hope that our courts
may as cases arise carry them out in a consistent manner.
On laying down these principles it is essential that they

should accord with the decisions already rendered in Virginia and West Virginia. Taking them as my polar star, I conclude that when a negotiable promisory note made payable to a particular person or order, is first endorsed by a third person, and then delivered to the payee, such endorser is *prima facie* an original promissor or guarantor, as the payee may elect, or the payee may by endorsing his name above that of such third person, and transferring the note, make him a second endorser in the commercial sense. But the true nature of the transaction, and the understanding of the parties to it at the time, may be shown by parol proof, and such proof may destroy this right of election by the payee, and the third person backing such note may be held liable only as an original promisor, or as a guarantor, or as an endorser, according to the nature of the transaction, and the original understanding of the parties to it. If it is shown by evidence that such third person signed his name on the back of such a note at the time it was made as security for the maker and for his accommodation, to give him credit with the payee, such proof does not alter the right of the payee to hold him bound as original promisor, or as guarantor, or as endorser, as he may elect, but strengthens his *prima facie* right to elect; such option may be exercised at any time by the payee, and so long as he holds the note, may be changed at his pleasure, even after the institution of a suit by him against such third person. If it be shown that the understanding between such third person and the payee at the time of the transaction, was that such third person should be bound only collaterally, such understanding will destroy the right which the payee would have otherwise had, of electing to hold him bound as original promisor. These principles are fairly deducible from the only cases on the subject decided in Virginia or West Viginia; *Watson v. Hunt*, 6 Gratt. 633; *Orrick v. Colston*, 7 Gratt., 198, and *Kearnes v. Montgomery*, 4 W. Va., 29. If a third person endorses ·

1877.
January Term.
———
Burton & Co.,
v.
Hansford *et al.*

at the time it is made, a negotiable note not drawn payable to him, he thereby indicates that he intends to bind himself for the payment of the note in some form, and if he has failed to indicate in what form it is fair to presume that he intended to be bound in any manner that the payee might elect. If he indicates to the payee at the time, the manner in which he intends to be bound, though his purpose thus indicated be proven by parol, he can not be held bound otherwise by the payee.

In the case of *Orrick v. Colston*, 7 Grat., 189. The drawers of the note wishing to borrow money of the payee, obtained the endorsement of Colston on a blank piece of paper as thier surety, and writing their own name on the other side, enclosed it by mail to the payee, who drew over the signatures of the drawers, a promissory note, not negotiable, for $1,000, payable to himself, and he sent a check for the $1,000 to the drawers. The note not being paid by the drawers, the payee sued the endorser, Colston, and then wrote over his signature, " in consideration of the loan of $1,000, by the payee, I guarantee the payment of the within sum of money." The declaration in the action brought against Colston charged him both as original surety for the debt and also as guarantor. The court say, " we are warranted in treating the case before us as if the perfecting of the note on the face of the paper, and the endorsing it by Colston had been contemporaneous acts, and had both preceded the delivery of the instrument to the payee." And they then consider the legal force of such an endorsement. The conclusion reached is, that the blank signature of Colston on the back amounted to either, " an absolute promise to pay or a collateral guaranty, it would be just as fair to presume one as the other ; it would be reasonable further to infer, that the person so endorsing in blank, intended to leave it in the power of the payee, to elect in which of the two aspects he would hold him bound." The court accordingly held that it was competent for the payee to have charged Colston, the endorser as a guaran-

tor, or as a direct and absolute security. And that the

writing of the guaranty over his name, did not destroy
the right of the payee to hold him bound in either char-
acter. It is true, that in this case, the note was not
negotiable and that in some of the states a distinction is
drawn between the responsibility to the payee aforesaid,
by a stranger, who at the time a note is made, puts his
name on the back, where the note is negotiable, and
where it is not. Such distinction is drawn in New York.
It is held now in that state, that if the note is not ne-
gotiable, such an endorser of it is *prima facie* bound
as an original promisor, but if the note is negotiable, he
is *prima facie* bound only as an endorser. *Rich-
ards v. Manning,* 1 Keyes, 576; *Cromwell v. Hewitt,*
40 N. Y., 491; and *Phelps v. Vischer,* 50 N. Y., 69.
But this conclusion that such a distinction between ne-
gotiable paper and paper not negotiable was not taken
in New York without serious opposition. It was finally
settled in that State by the case of *Hill v. Newcomb,* 7
Hill, 416. This case was twice argued before the court
of errors of that State. Upon the first argument the
court was equally divided in opinion, and upon the sec-
ond argument it was decided by a vote of 17 to 8. In
Connecticut, as before stated, it is held that the endorse-
ment of a note not negotiable at the time it is made by
a third party *prima facie* renders him liable to the payee
only as a guarantor, and in *Perkins v. Collins,* 11 Conn.,
213, the court expressly repudiates any distinction in
that respect between a note not negotiable and one that
is negotiable. Such a distinction in such a case is also
repudiated by the Supreme Court of Missouri, though
there, under such circumstances, the endorser is held
*prima facie* liable to the payee in either case as an orig-
inal promisor. *Lewis v. Harvey,* 18 Mo., 74. The same
is the law in Massachusetts, where no distinction in such
a case is made. *Sumner v. Gay,* 4 Pick., 311. The dis-
tinction was repudiated in *Champion & Lathrop v.
Griffith,* 13 Ohio, 228, and also in *Rothschild v. Grix,*

31 Mich., 150, where, in such a case, the endorser was held liable as an original promisor. The New York cases are reviewed in this last case, and the distinction drawn by them in ·such cases between negotiable notes and other notes is repudiated by the court. And, generally speaking, no such distinctions have been made by the courts in these decisions, the cases having been generally decided without any regard to the fact that the notes were or were not negotiable. I conclude, therefore, that no such distinction can properly be drawn. But while an endorsement by a stranger, at the time a negotiable note is made, makes him *prima facie* responsible to the payee, either as principal promisor ·or as guarantor, as the payee may elect, yet "if the note was intended for discount, and he put his name on the back of it with the understanding of all the parties that his endorsement would be inoperative until it was endorsed by the payee, he would then be liable only as second endorser in the commercial sense." This is the language of Justice Clifford, in delivering the opinion of the Supreme Court of the United States in 22 Howard, 350, and ·is a just conclusion from the authorities. In the case of *Kearnes v. Montgomery,* 4 W. Va., 29, the defendant owing the plaintiff, proposed to him to take for his debt the bond of third parties, which the defendant had drawn payable directly to the plaintiff. The plaintiff refused to accept this bond, as it was payable to the plaintiff instead of to the defendant, unless the defendant would endorse it. The defendant wrote his name on the back of it, and the plaintiff accepted it, surrendering to the defendant his bond which plaintiff held for the debt. The bond not being paid, the plaintiff brought an action of assumpsit against the defendant, and before the trial wrote over the defendant's endorsement, "for value received, I hereby become the security of the obligors in the within bond." The court held that the plaintiff could not hold the defendant bound as original promisor or security, but only as guarantor. This decision

is in consonance with the principles laid down above, and with the case of *Orrick v. Colston,* 7 Gratt., 198. The evidence showed that "the defendant was to assume the same situation as to liability that he would have occupied had the paper been executed to him as payee, and transferred by him to the plaintiff." And such liability would not have been direct but only collateral. The *prima facie* responsibility of the defendants as original promisor at the election of the payee was therefore in that case overthrown by the proof showing that he was only to be bound collaterally. But the reasoning of Judge Maxwell, in that case was inconsistent with the views above expressed and if I am right in the conclusion reached that their is no good ground for the distinction between the *prima facie* liability to the payee of a stranger who has endorsed at the time it was made a note which is not negotiable and one which is negotiable then the reasoning of Judge Maxwell is inconsistent with the opinion of the court in *Orrick v. Colston,* 7 Gratt., 189. But these views of Judge Maxwell do not seem to have been approved by Judge Brown, for while he concurs with him in the decision rendered, he does not concur with him in his views, though Judge Berkshire did. Judge Maxwell in his opinion says : " If a stranger endorses his name in blank on the back of paper not negotiable, he is *prima facie* guarantor, but this presumption may be rebutted by showing the original understanding of the parties, by showing an express agreement otherwise, or by showing circumstances from which one may be inferred." He, however, neither assigns any reason for this position nor does he cite any authority to sustain it. If we are to infer that he thought there was a difference in such case between the liability of a stranger who endorses a note not negotiable and one who endorses a negotiable note, I think both reason and authority show that such distinction is not well founded. The review of the cases before cited satisfy my mind that no such

1877.
January Term

Burton & Co.,
v.
Hansford *et al.*

distinction can properly be drawn. And if there is no such distinction then, as I have endeavored to show above, the responsibility of a stranger so endorsing would not be that of a guarantor only, but at the option of the payee, it would *prima facie* be, either that of an original promisor or that of a guarantor. In the particular case then before the Court, if Judge Maxwell's view of what was shown by the evidence be correct, this *prima facie* case against the endorser that he might be held as original promisor, was rebutted by the evidence which shows that the understanding was that he was only to be bound collaterally. I regard this expression of opinion by Judge Maxwell, as a dictum not concurred in by Judge Brown, and open to consideration whenever a case arises which fairly presents the point. In this case it is only necessary to decide that a stranger who endorses negotiable paper at the time it was made is *prima facie* liable to the payee as original promisor if he chooses to so regard him.

To apply the principles above laid down to the present case, will be very easy. There is nothing in the evidence to show that Hansford put his name on the back of these notes with the understanding of all the parties that his endorsement would be inoperative until it was endorsed by the payees. Had this been shown, he would have only been liable as a second endorser in the commercial sense, and could not have been sued by the payees. But it is shown that he put his name on the back of these notes, at the time they were made, as surety, for the maker, and for his accommodation to give him credit with the payees. He is, therefore, responsible to them at their option, either as an original promisor, or as a guarantor. The only ground for questioning for a moment the true intention of the parties in this transaction, is the fact that the plaintiff's agent drew the notes payable at one of the Charleston banks. But his declared purpose in so drawing them, was that the plaintiffs *if they should wish to do so*, might have them dis-

counted. In other words it was understood at the time by the drawer that the plaintiffs might continue to hold the notes if he chose, or have them discounted if they thought proper. Had Hansford endorsed it with this understanding, he would have been responsible as original promisor, if the payees chose to so hold him responsible, unless in the exercise of their discretion expressly reserved, the plaintiffs chose to endorse the notes first, and have them discounted. If this had been done they could not have held Hansford liable to them at all. But in point of fact Hansford was not informed that the plaintiffs, or their agent, had any idea of having the notes discounted, he endorsed them simply as surety for the drawer, in and for his accommodation, and to give him credit with the payees. The plaintiffs therefore had a right to hold him as an original promisor, and to recover of him the amount of these notes on the common money counts in the declaration. And it follows the court did not err in permitting both these notes to be read as evidence on the trial of the case.

The judgment of the circuit court of Kanawha, rendered in this case on June 11, 1874, must, therefore, be affirmed, and the appellees must recover of the appellant their costs about this appeal expended in this Court, and damages according to law.

JUDGMENT AFFIRMED.