[Civil No. 171.   Filed November 8, 1886.]

.[S. C. sub. nom. *Johnson* v. *L. Zeckendorf*, et al., 12 Pac. 65.]

JOHN S. JOHNSON, Plaintiff and Respondent, v. P. R. TULLY, et al., Defendants and Appellants.

1. NEGOTIABLE INSTRUMENTS—PAYEE ENDORSING FOR DISCOUNT NOT CO-MAKER BUT ENDORSER.—Where the transaction is no other that the ordinary discount by the payee of the note by indorsement the payee, by writing his name on the back of the note, becomes not a co-maker but an endorser.

2. SAME—ENDORSERS ENTITLED TO NOTICE OF DEMAND AND NON-PAYMENT BY MAKERS UNLESS SAME IS WAIVED.—First endorsers are entitled to notice of demand and non-payment by makers unless this is waived.

3. SAME—PRINCIPAL AND AGENT—WAIVER OF PROTEST BY PERSON IN CHARGE OF BUSINESS OF INDORSERS AND WHO DEMEANS HIMSELF AS GENERAL AGENT IS SUFFICIENT TO BIND INDORSERS.—Where the bookkeeper of the indorsers was ostensibly in charge of their business during their absence from the city and demeans himself as general agent waiver of protest by him is binding upon his employers.

Petition for allowance of appeal to the Supreme Court of the United States denied. Post, 223.

APPEAL from a judgment of the District Court of the First Judicial District in and for the County of Pima. Affirmed.

The facts are stated in the opinion.

Earll, Campbell and Stephens, and Charles Silent, for Appellant.

The case of *Rey* v. *Simpson*, cited by the respondent, has no application here. A careful perusal of the opinion of the court will show conclusively that it has no application whatever to a case where the payee of a note indorses it; but only to a case where a third party not the payee puts his name on the back of the note before it is delivered to the payee. *Goods* v. *Martin*, 95 U. S. 90, also cited by the respondent's counsel, is a case of similar character and deals with the same class of paper. The other case cited by respondent (*National Bank of Wooster* v. *Lockstitch Co.*, in the Circuit Court of Illinois) is a case of the same sort and rests upon the authority of *Goods* v. *Martin*. In none of these cases is a suggestion made that when the payee of a negotiable instrument indorses it before it is put in circulation he is to be treated as a joint maker, or as anything but an ordinary indorser, with all the rights belonging to that character, among which is a right to notice of non-payment by the maker. For a definition of "Indorser" see Daniels on Negotiable Instruments, Vol. 1, 3rd edition, Sec. 666. An accommodation indorser is just as much entitled to notice of non-payment as an indorser for value. 2 Daniels on Neg. Inst., Sec. 995, p. 53.

In *French* v. *Bank of Columbia*, 4 Cranch. 141, it was contended that notice to an accommodation indorser was unnecessary. In deciding that it was necessary, Chief Justice Marshall said: "Notice of non-payment by the maker is necessary because the undertaking of the indorser is conditional, and whenever in fact the transaction is such, that the maker of the note ought in justice to pay it, and is bound ultimately to make it good, it would seem reasonable that payment should be demanded of him, and that reasonable notice of non-payment should be given to the indorser."

That parol evidence cannot be received to alter, vary, or change the contract of indorsement we refer to *Bank of U. S.* v. *Dunn*, 6 Pet. 51, and 10 Curt. Dec. 20, which is conclusive upon this point, disapproving *Hill* v. *Ely*, 5 Serg. & R. 363, 9 Am. Dec. 376, in so far as it permits parol evidence to be introduced to contradict or vary the contract of indorsement. See, also, *Dale* v. *Gear*, 15 Conn. 15, 9 Am. Rep. 353; *Chaddock* v. *Van Ness*, 35 N. J. L. 517; *Fassen* v. *Hubbard*, 55

N. Y. 465; *Charles* v. *Denis,* 42 Wis. 56, 24 Am. Rep. 383; *Lee* v. *Pile,* 37 Ind. 107.

R. D. Ferguson, and Jeffords & Franklin, for Respondent.

In the light of all the circumstances and the understanding of the parties, L. Zeckendorf & Co. were joint makers of the note. *Rey* v. *Simpson,* 22 Howard, 341; *Goods* v. *Martin,* 95 U. S. 90; *Bank* v. *Lock Stitch Co.,* 24 Fed. Rep. 221. A joint maker is not entitled to notice of the failure of his co-maker to pay.

"In respect to the rights of the creditor the liability of the surety commences at the moment the contract of suretyship is executed. He is bound with his principal as an original promissor, and is a debtor from the beginning." Bayliss on Sureties and Guaranties, p. 133, Sec. 2.

"The holder is not obliged to give notice to the surety that the principal debtor has failed to pay, and that he is looked to on his suretyship." 1 Parsons on Notes and Bills, p. 236; Baylie's Sec. and Guar., p. 205, Sec. 7, and authorities there cited.

Compiled Laws of Arizona, Chap. XL; Sec. 5, p. 372, empowers Notaries Public to protest notes for non-payment. Sec. 6 provides that the certificate of the notary public under his hand and seal of office, of official acts done by him as such notary, shall be received as presumptive evidence of the facts contained in such certificate. But such certificate shall not be evidence of notice of non-acceptance or non-payment in any case in which a defendant shall annex to his plea of defense, an affidavit denying the fact of having received such notice.

Where protest of notes is provided for by statutory enactment, the protest when made is accorded the same effect as when made on a bill. And the waiver of protest of a note has the same significance as when waived in regard to a bill. Daniels on Negotiable Insts., Vol. II, p. 138-9.

Any words importing that protest is waived are, when applied to a foreign bill, universally regarded as expressly waiving presentment and notice, the protest being, according to the law merchant, the formal and necessary evidence of the dishonor of such instrument; Daniel, Vol. 2, p. 138, and cases cited; Parsons on Notes and Bills, Vol. 1, p. 579.

Since the statute of Arizona does provide for the protest

of inland notes, a waiver of protest also waives the demand and notice. Parsons, Vol. 1, p. 578, note.

As to what acts will establish authority upon the part of an agent to waive protest, see Daniels, Vol. 1, Sec. 296, and authorities cited; Vol. 1, p. 264, Sec. 278; *In Re Brown,* 2 Story, 502, Fed. Cas. No. 1985.

BARNES, J.   This was an action brought by Johnson against L. Zeckendorf & Co., upon a promissory note made by Tully, Ochoa & Co., and purporting to be indorsed by L. Zeckendorf & Co.   The note reads as follows:

"$2,800.                    TUCSON, A. T., September 17, 1881.

"Three months after date we promise to pay, to the order of L. Zeckendorf & Co., twenty-eight hundred dollars, at two per cent. interest per month, value received.

[Signed]                         "TULLY, OCHOA & CO.

Indorsed:   "L. ZECKENDORF & CO.

After the indorsement of L. Zeckendorf & Co., and upon the back of the note, these words were written:

"We hereby waive protest.

"*Tucson, A. T., December* 17, 1881.   L. ZECKENDORF & CO.

"J. WITTLESHOEFER."

It appears from the evidence in this case that the defendants, Tully, Ochoa & Co. and L. Zeckendorf & Co., were separate mercantile houses, doing business at Tucson; that the former were indebted to the latter, who were pressing for a reduction of the balance due.   The plaintiff had made known to a broker by the name of Fried that he had $2,800 to loan. Zeckendorf & Co. went to the broker, and told him Tully, Ochoa & Co. were indebted to them, and that they were trying to get payment.   Fried said he had a customer for whom he would loan $2,800, with Zeckendorf & Co.'s indorsement.   Tully, Ochoa & Co. also asked him if he could get them a loan.   He said he could with Zeckendorf & Co.'s indorsement.   The note was handed to him, and plaintiff handed him the money, and he delivered the note to plaintiff. Zeckendorf & Co. paid him $42, one-half of 1 per cent. for 90 days' brokerage, for negotiating this loan.   The money went to Zeckendorf & Co., and on that day Tully, Ochoa & Co. were credited $2,800 on the books of Zeckendorf & Co.   The plaintiff left the note in the safe of Mr. Etchells for safe-

keeping. When the note was due, viz., December 17th, Etchells took the note to Zeckendorf & Co.'s place of business, and handed it to the person in charge of the main office. The person to whom it was handed directed him to Mr. Wittleshoefer, who was the book-keeper. The latter took the note, and wrote the indorsement of December 17th. At that time the members of the firm of Zeckendorf & Co. were absent, as well as Strauss, the general financial manager; and Wittleshoefer was left in charge of the business.

The court below found the above facts, substantially, and, as a matter of law, concluded that Zeckendorf & Co. was a joint maker of the note, and so liable, without notice of nonpayment by Tully, Ochoa & Co. The court also found that Wittleshoefer was an agent authorized to waive protest, and bind the firm. The appellants seek to reverse this case for errors in concluding that Zeckendorf & Co. were joint makers, and not indorsers, and that Wittleshoefer was authorized to waive protest.

If Zeckendorf & Co. are joint makers, no notice and protest was necessary; but if they are indorsers, notice, demand, and protest were necessary and it then becomes important to inquire whether notice, demand, and protest were waived. Upon its face, this is no other than a contract of indorsement. Tully, Ochoa & Co. are the makers; Zeckendorf & Co. are the payees. Zeckendorf & Co. wrote their name on the back of the note, and so are indorsers in blank. This was done on the date of the note. The evidence in this case confirms that. Plaintiff was willing to loan on Zeckendorf & Co.'s indorsement, and not otherwise. Zeckendorf & Co. negotiated this loan,—that is, discounted the note,—and paid the brokerage therefor. The proceeds of the note went to them, and they, on the same day, gave Tully, Ochoa & Co. credit for the same. The transaction was no other than the ordinary discount by the payee of a note by indorsement. Tully, Ochoa & Co. owed Zeckendorf & Co., and gave their note to them, who indorsed it to plaintiff. It was not accommodation paper, nor an accommodation indorsement by a stranger to the note, and hence does not come within *Rey* v. *Simpson*, 22 How. 341; *Good* v. *Martin*, 95 U. S. 90, and that class of cases. These cases hold that a stranger to a note, who indorses the same before delivery, is a

joint maker of the note. While this is sustained by the weight of authority, and, as we think, by the better reason, it has met strong opposition. See note to *Burton* v. *Hansford,* (10 W. Va. 470, 27 Am. Rep. 580; note to *Jones* v. *Goodwin,* (39 Cal. 493,) 2 Am. Rep. 475; note to *Fitzhugh* v. *Love,* (6 Call, 5,) 3 Am. Dec. 571; and note to *Moies* v. *Bird,* (11 Mass. 436,) 6 Am. Dec. 182.

We conclude that the court below erred in holding that Zeckendorf & Co. were joint makers of the note with Tully, Ochoa & Co., and therefore liable as a principal.

As first indorsers, Zeckendorf & Co. were entitled to notice of demand upon and non-payment by the makers, Tully, Ochoa & Co., unless the evidence shows that this was waived. On the back of the note in evidence, on the date of the maturity of the note, was indorsed the words, "We hereby waive protest," signed by Zeckendorf & Co., "J. WITTLE-SHOEFER." It could not be contended that this would not be a waiver if signed by one of the firm of Zeckendorf & Co., but it is insisted that Wittleshoefer, who wrote "L. Zeckendorf & Co." on the note had no authority to do so. This was one of the issues of fact on the trial, and the court found that he had authority to waive protest, and bind the firm. We cannot say that this finding is erroneous. There is evidence to sustain it. The evidence was better presented before the trial court than it can be here, and that court can better determine disputed questions of fact. Etchells, with whom the note was left for safekeeping, testified that he told plaintiff when the note was due to remind him, and he would go and have them waive protest, or pay the money, that plaintiff did remind him, and on the day the note was due he took it to Tully, Ochoa & Co., first, and demanded payment, and they wrote their name on the back of it. He then took it to Zeckendorf & Co., and presented it to some one at the table in the front or main office, and he, whoever he was, directed him to Wittleshoefer, who was in the inner office. Wittleshoefer took the note and wrote the waiver of protest on the back, and handed it back to him. Nothing was said. He did not say he had no authority to do it. Wittleshoefer testified that he was the book-keeper of Zeckendorf & Co., and had been for five years; that the waiver of protest was in his handwriting; it was done in the office of Zeckendorf & Co.; Steinfeld and

Strauss were out of town; in their absence, that he had drawn checks; that his signature was placed in the bank by Mr. Steinfield; in the absence of Steinfield and Strauss, that he drew checks for the interest of the business, and it was left to his judgment as to amount, and when needed, and he would have checked to pay an accepted bill, when due and presented. Asked what he would have done if a matured note had been presented, and what would have been his authority, he did not answer. There was much evidence and much contradiction directed to proof of other similar acts by Wittleshoefer, but we do not think it material to inquire further. We think Zeckendorf & Co. were clearly bound by the waiver of protest by Wittleshoefer. Had he, in the absence of the members of the firm, and of Strauss, the general manager, been found in the general office of Zeckendorf & Co. on the day the note was due, and then and there he had been served with notice of demand upon the makers, and non-payment of the note, such service would have been good. *Bank of Louisiana* v. *Mansker,* 15 La. 115; *Banking Ass'n* v. *Place,* 4 Duer, 212; *Jacobs* v. *Turner,* 2 La. Ann. 964; *Merz* v. *Kaizer,* 20 La. Ann. 377.

We quote from Daniels on Negotiable Instruments, § 1017: "Notice left with a clerk or person in charge at the party's place of business, in his absence, or at his place of business, without proof as to the person with whom it is left, is sufficient; and proof that such person was not the party's agent has been held irrelevant, notice being left at the right place. So, leaving it with his private secretary, at his public office, is sufficient."

Notice served upon Wittleshoefer would have been good service, but when the service was made he waived protest, and all further steps in the matter. If he were not specially authorized to do this, who should lose,—his employer, or the person who found him ostensibly in charge of the business, in the absence of the employer, and towards whom he demeans himself as general agent in charge, and assumes to act as such? We think the former. This disposes of all the questions in the case.

The judgment is affirmed.

PORTER, J., concurs.