# CHARLESTON.

## SINGER MANUFACTURING Co. v. BENNETT et al.

Submitted February 3, 1886.—Decided March 27, 1886.

1. A party, who has contracted with a corporation as such, can not afterwards raise the objection that, at the time he entered into such contract, the corporation was not legally incorporated, if such corporation could constitutionally exist. (p. 22.)

2. "Whenever it becomes material to ascertain what the law statutory or otherwise of another State or country or of the United States is or was at any time, the court, judge or magistrate shall take judicial notice thereof and may consult any printed books purporting to contain, state or explain the same and consider any testimony, information or argument that is offered on the subject." (Code ch. 15 § 4). (p. 22).

3. Where a creditor brings suit to set aside a fraudulent conveyance of land and to sell the same to pay the debt of such grantor, who claims that he is entitled to credits upon or to sets-off against such debt and wholly fails to prove, that he is entitled to any such credit or set-off, it is unnecessary to refer such cause to a commissioner. (p. 33.)

4. A corporation created under the laws of the State of New York is sufficiently proved in this State, by the production of a copy of the certificate of its incorporation, attested by the Secretary of State of the State of New York under the seal of his office authenticated by the Governor of New York under the great seal thereof, or by a copy of such certificate of incorporation made by the clerk of the county, in which the business of the corporation shall be carried on, under the seal of his office, and certified by the presiding justice of the supreme court of said county, and further authenticated by the clerk of such court under the seal of said court in the manner prescribed by sec. 20, of chap. 130 of the Code. (p. 24.)

4. A. and B. are appointed by a corporation its agents for the sale of sewing machines in certain counties, and they with H. B. as their surety and with J. M. B., who is surety for A. B. and H. B., executed to it a bond in a certain penalty conditioned, that A. &. B. "shall well and faithfully perform their duties as such agents and account for, pay over and deliver to it all moneys, property and effects, &c. belonging to it, that may be entrusted to them or come into their possession." A. &. B. made default in the faithful performance of their duties as such agents in selling machines outside of the specified counties and in failing to pay to the corporation $1,200.00 received by them as such agents, whereupon H, B. executed for the benefit of such corporation his notes for that amount payable at a future day without the consent of J. M. B., which were given and accepted in discharge of the indebtedness of A. &. B. Held :

I. When the corporation accepted the notes of H. B. in discharge of the indebtedness of A. & B., said J. M. B. was in equity discharged from all liability on said bond.

II. The discharge of J. M. B. did not inure to the benefit of H. B. who stood in the relation of a principal debtor to the corporation and to J. M. B., and not as a co-surety with him.

III. The moneys due from A. & B. to such corporation, whether derived from the proceeds of the sales of its machines, made within or without the counties specified in the bond, were chargeable upon their sureties therein.

IV. H. B. has no right to contribution from J. M. B. for any money he may be compelled to pay as the surety of A. & B.

V. In a suit brought by such corporation to set aside as fraudulent a conveyance of his lands, made by H. B., and to charge the same with the payment of the moneys specified on said notes, J. M. B. is neither a necessary nor a proper party. (p. 26.)

*J. M. Bennett* for appelant.

*W. W. Brannon* and *A. C. Hill* for appellee.

WOODS, JUDGE :

On November 11, 1876, Hezekiah Bennett made to R. P. Beatty, agent &c, or order three notes of $400.00 each payable in one, one and a half and two years thereafter with interest, negotiable and payable at the National Exchange Bank of Weston, W. Va, " being in discharge of the indebtedness of P. W. and H. Bennett to the Singer Manufacturing Company of Richmond, Virginia," which were afterwards transferred and delivered by Beatty to said company. At the time of making these notes Hezekiah Bennett was the owner of a valuable farm in Lewis county, containing 263 acres, being all the land owned by him. On December 23, 1879, he and his wife by deed of that date, in consideration of their maintenance and support during their lives conveyed this land to their son Levi Bennett, who was destitute of means to purchase the same, and who, at the time he accepted the deed, had knowledge of the existance of the plaintiff's debts, and that they were unpaid, and that the conveyance to him of the 263 acres of land left his father insolvent. No other consideration for said land was paid or agreed to be paid by Levi Bennett. On May 11, 1878, on March 4, 1879, and on March 15, 1879, Hezekiah Bennett wrote letters to The Singer Manufacturing Company, describing this land, its quality and value, the quantity and the character of the improvement thereon, claiming the same as his own and offering to sell one half of it to get the money to pay said debt asking further indulgence, and promising to pay the same in a short time but concealing from the company the fact, that he had long before that time conveyed the same to his son. Before he conveyed his land to his son Levi, Hezekiah Bennett was indebted to one Marsh in the sum of about $200.00 ; and on July 6, 1878, Levi Bennett and wife conveyed fifty acres of said land to Jacob Morrison, trustee, to secure the payment thereof.

Under these circumstances The Singer Manufacturing Company professing to be a corporation and R. P. Beatty filed a bill in the circuit court of Lewis county against Hezekiah Bennett and his wife, Levi Bennett, John C. Marsh and Jacob Morrison, trustee, alleging the existence of the foregoing facts, and that the deed made to Levi Bennett convey-

ing to him the 263 acres of land was made without valuable consideration and with intent to hinder, delay and defraud said company in the collection of its debt of $1,200.00, and that Levi Bennett before and at the time of the execution of said deed had knowledge of and participated in the fraudulent intent of Hezekiah Bennett, and prayed that the same might as to the debt to the company be declared fraudulent and void, and the land be sold to pay the same, and for general relief. The bill was taken for confessed as against all the defendants except Hezekiah Bennett, who filed a plea denying, that The Singer Manufacturing Company was or ever had been a corporation, and also answered the bill, to which the plaintiffs filed a general replication.

The answer admits the execution of the three notes of $400.00, the execution of the conveyance to Levi Bennett for the consideration and for the purposes therein mentioned, and the embarrassed condition of Hezekiah Bennett and his insolvency, if the plaintiffs demand against him be established, but denies, that he conveyed the land to his son with intent to hinder, delay or defraud his creditors. The answer also denies, that he is liable to pay the plaintiff's demand, because the three notes of $400.00 each mentioned in the bill were executed by him on account of his supposed liability as the surety of his two sons, Preston and Hanson, as agents of the company in the sale of Singer sewing machines in the counties of Bath, Botetourt, Rockbridge, Craig and Roanoke in Virginia and not elsewhere. The answer alleges that the plaintiffs exhibited an account of sales made by said Preston and Hanson Bennett as such agents, and represented it to be binding upon the security on said bonds or notes; and that believing he was so bound he without any conference with his sons P. and H. Bennett, who were the principals in the transaction, gave his bond for $2,100.00 in satisfaction thereof, which was subsequently reduced by payments made thereon to $1,200.00, for which he executed the three notes of $400.00 each in the bill mentioned; that he afterwards learned, that the entire amount of sales, for which he gave these notes, was for sales made in other counties than those before mentioned, for money received from sales in which he bound himself to become responsible; and further that said "notes

were executed under misrepresentation of the account of sales and for a consideration having no value."

The answer further averred, that one Jonathan M. Bennett was joint security with him for the payment to the plaintiff of all debts on account of sales; that the plaintiff had released him, and by doing so had also released the defendant; that the sales made by P. and H. Bennett were payable in notes taken by them on account of sales, and he professed to "tender as payment the following notes, to-wit: One given by —— Williams, and several others not known to the defendant," and also a "list of claims for sewing machines sold out of the district amounting to $3,460.00 which were included in the notes claimed by the plaintiffs." The answer also averred that various payments, particularly specified, amounting to $2,538.43, had been made upon account of said sales, and that he "presumed that the notes given by Williams and others belong to the plaintiff."

Neither the bill nor the answer was verified.

During the progress of the cause Levi Bennett conveyed 123 out of the 263 acres to one Philips, who was brought into the cause by a supplemental bill, which was answered by him and Hezekiah Bennett, but as neither the supplemental bill nor the answers thereto introduce any new subject of controversy or matter of defence, they need not be further noticed.

The plaintiff filed as evidence in the cause, two copies of the certificate of incorporation of The Singer Manufacturing Company, one of which was authenticated by the Secretary of State of the State of New York with the seal of his office, and by the Governor of that State under the great seal thereof; and the other was authenticated by the certificates of the clerk of the city and county of New York and of the clerk of the supreme court for the said city and county and by the certificate of the presiding justice of the the supreme court of the State of New York for the city and county of New York in the manner prescribed by sec. 20 of ch. 130 of the Code, save only, that for the word "commissioned" the said certificate used the word "elected."

Many depositions were taken and filed by the plaintiffs and by Hezekiah Bennett, and on June 30, 1883, the cause was

heard upon the bill and supplemental bill, answers of Hezekiah Bennett and Philips thereto, general replications to said answers, bills taken for confessed as to all the other defendants, depositions and documentary evidence and exhibits, on consideration whereof it was among other things adjudged and decreed, that Hezekiah Bennett pay to The Singer Manufacturing Company $1,677.30 with interest from that day and the costs, and that the deed dated December 23, 1876, made by Hezekiah Bennett and wife conveying said 263 acres to Levi Bennett be set aside as fraudulent and void as to the plaintiff's debt, and that, unless the same be paid within sixty days, a special commissioner appointed for the purpose should sell at auction so much of said land, as had not been conveyed to Philips with leave reserved to the plaintiff to resort to that portion also, in case the preceeds of the sale directed to be made should prove insufficient to pay the amount decreed to the plaintiff.

This decree was so modified by the decrees of March 12 and 20, 1884, that the special commissioner was directed to sell said lands on a credit of one, two and three years from the day of sale with interest.

From the decree of March 12, 1884, the defendant, Hezekiah Bennett, has obtained an appeal and *supersedeas.*

The appellant assigns for error: first, that J. M. Bennett is not charged with one half of the debt charged against appellant; second, that the court refused to dismiss the plaintiff's bill for failing to prove The Singer Manufacturing Company was a corporation; third, that the court did not refer the cause to a commissioner to ascertain how much of the plaintiff's claim had its origin in sales made by its agents in counties other than those named in the bond; and fourth, that the court did not allow the appellant credit for the bonds or notes delivered to the plaintiff by said P. W. and H. Bennett.

The plaintiff, The Singer Manufacturing Company, claiming the proceeds of the three notes of $400.00 sues as a corporation to enforce the collection thereof, but fails to allege in its bill, by what authority it was incorporated, and where it existed. The plea as well as the answer of the appellant denied, that The Singer Manufacturing Company was or ever had been a corporation, and it devolved upon the plain-

tiff to prove that fact.   But as Hezekiah Bennett, when he became the surety of his sons, P. W. and H. Bennett, to The Singer Manufacturing Company, contracted with it as "a corporation duly organized under the laws of the State of New York," he can not raise the objection, that it was not at that time legally incorporated, if it could constitutionally exist.   ( *White* v. *Coventry*, 29 Barb. 305 ; *Steam Navigation Co.* v. *Weed*, 17 Barb. 378; *Trumbull Co. M. Ins. Co.* v. *Horner*, 17 Ohio 407;   *The Brookville & Greensburg Turnp. Co.* v. *McCarty*, 8 Ind. 392; *Ensey* v. *The Cleveland & St L. R. R. Co*, 10 Ind. 178; *The Fort Wayne, &c, Turnp. Co.* v. *Deam*, 10 Ind. 563.) To prove the existence of the corporation the plaintiff offered as evidence, and made the same part of the record, the two copies of the certificate of its incorporation under the laws of the State of New York before referred to.

By sec. 4, of ch. 13 of the Code it is provided :

"Whenever in any case it becomes material to ascertain what the law, statutory or other of another state or county or of the United States is, or was at any time, the court, judge or magistrate shall take judicial notice thereof and may consult any printed books purporting to contain, state or explain the same, and consider any information or argument that is offered on the subject."   By sec. 19, of Title 14, ch. 18 of Rev. S. of N. Y, 6 Edition p. 500, it is provided that, " any three or more persons, who may desire to form a company for the purpose of carrying on any kind of manufacturing * * business, may make, sign and acknowledge before some officer competent to take the acknowledgement of deeds, and file the same in the office of the clerk of the county in which the business of the company shall be carried on, and a duplicate thereof in the office of the secretary of state, a certificate in writing, in which shall be stated the corporate name of the company, and the object for which the company shall be formed, the amount of the capital stock of the said company, the term of its existence ( not to exceed fifty years) the number of shares of which the stock shall consist, the number of trustees and their names, who shall manage the concerns of said company for the first year, and the name of the town and country in which the operations of the company are to be carried on."

By section 20 of the same Title it is further provided:

"When the certificate shall have been filed as aforesaid, the persons who shall have signed and acknowledged the same and their successors shall be a body politic and corporate, in fact, and in name, by the name stated in such certificate; and by that name have succession and shall be capable of suing and being sued in any court of law or equity in this State, and they and their successors may have a common seal, and make and alter the same at pleasure; and they shall by their corporate name be capable in law of purchasing, holding and conveying any real or personal estate whatever which may be necessary to enable the said company to carry on their operations named in such certificate, but shall not mortgage the same or give any lien thereon."

It is evident from these provisions, that, as soon as the agreement in writing made in pursuance thereof is acknowledged and filed in the office of the clerk of the proper county, and a duplicate thereof is filed in the office of the secretary of state, the company formed thereby is not only incorporated but is also a corporation fully organized and prepared and authorized to transact all of its ordinary business. The original agreement in writing filed in the office of the clerk of the proper county and the duplicate thereof filed in the office of the secretary of state become public records of said offices respectively and may therefore be proved, as other records not appertaining to a court may be proved.

In the case under consideration the plaintiff out of abundance of caution proved the incorporation of The Singer Manufacturing Company by a certified copy of the certificate of incorporation thereof from the office of the secretary of state under the seal of his office, authenticated by the governor of the State of New York under the great seal of that State, and also by a like certificate from the clerk of the city and county of New York, and of the supreme court of said city and county, and by the presiding justice of said court for the said city and county, whose certificate was in turn authenticated by said clerk under the seal of said court. Both of these certificates, and their accompanying attestations are in the exact form prescribed by sec. 20 of ch. 130 of the Code. The absence in the last certificate of the word

"commissioned" and the insertion in lieu thereof of the word "elected" is immaterial, because in the State of New York, judges are not "commissioned," but having been elected they are qualified by simply taking the oath of office. Either of the certificates filed by the plaintiff with its accompanying attestations was sufficient to prove, that The Singer Manufacturing Company was a corporation duly organized and then existing, all of which fully appeared upon the face of the certificate of incorporation. The circuit court therefore did not err in failing to dismiss the plaintiff's bill, because it failed to prove that it was an existing corporation.

From the answer of Hezekiah Bennett and the evidence in the cause it appears, that Preston H. Bennett and Hanson Bennett were on March 17, 1874, appointed agents of The Singer Manufacturing Company for the sale of sewing machines and the transaction of such other business, as it may intrust to them in certain counties in Virginia; and that, to secure the faithful discharge of their duties as such agents, they together with said Hezekiah Bennett, and Jonathan M. Bennett as their sureties executed the following bond:

"Know all men by these presents, that P. W. Bennett and H. Bennett, of Lewis county, W. Va., Hezekiah Bennett, of Lewis county, W. Va., and J. M. Bennett, of Lewis county, W. Va., are held and firmly bound unto The Singer Manufacturing Company (a corporation duly organized under the laws of the State of New York) in the sum of $5,000, lawful money of the United States of America, to be paid to the said The Singer Manufacturing Company, their successors, representatives and assigns; for which payment, well and truly to be made, they bind themselves, their heirs, executors and administrators, jointly and severally, firmly by these presents. Sealed with their seals; dated the 17th day of March, 1884.

"The condition of the above obligation is such, that whereas the above bounded P. W. and H. Bennett have entered into the employ of the said The Singer Manufacturing Company as agents for the sale of sewing machines and the transaction of such other business as they may intrust to

them in the counties of Highland, Bath, Allegany, Botetourt, Rockbridge, Craig and Roanoke, State of Virginia. : Now therefore, if the said P. W. and H. Bennett shall well and faithfully perform their duties as such agents and account for, pay over and deliver to said company all moneys, credits, notes, accounts, books, property and effects of any and every kind and nature whatsoever belonging to them that may be intrusted to them or come into their possession, then this obligation to be void; otherwise to remain in full force and effect.             .

"P. W. BENNETT,

"HANSON BENNETT,

"HEZEKIAH BENNETT,

"J. M. BENNETT,

"*Security for all prior parties.*

"Signed, sealed and delivered in presence of us.

"JAMES BRUFFY,

"G. BENNETT."

It is apparent from the face of this bond, that, while all the obligors are equally bound to the company, Hezekiah Bennett is surety for P. W. Bennett and Hanson Bennett, and that Jonathan M. Bennett is surety of all the other obligors, and each of them is bound to refund to him any amount, which he as such such surety may pay to the company on account of any default of P. W. Bennett or Hanson Bennett in performing the condition of the bond. By the face of the bond Hezekiah Bennett as well as P. W. and H. Bennett was bound to pay whatever liability might fall upon him, and he had no right to charge Jonathan M. Bennett with any part thereof, or to have contribution from him, for any money, which he as the surety of his sons, P. W. Bennett and Hanson Bennett, might be compelled to pay to The Singer Manufacturing Company.

It does not appear, whether the bond for $2,100.00 executed by Hezekiah Bennett in the absence and without the knowledge of P. W. Bennett and Hanson Bennett on account of their indebtedness to said company operated as a release in equity of the liability of Jonathan M. Bennett to the said company or not, as neither the bond itself nor the date thereof nor the time, when the same became payable, appears in the

record; but it is very certain, that The Singer Manufacturing Company by bringing this suit for the collection of the three notes in the bill mentioned ratified the act of its agent R. P. Beatty in accepting from Hezekiah Bennett in discharge of the indebtedness of P. W. and H. Bennett to it the said notes and having accepted them in discharge of the debt of P. W. and H. Bennett and having extended the time of payment without the consent of Jonathan M. Bennett, thereby released him in equity.

But the release of J. M. Bennett can not inure to the benefit of Hezekiah Bennett, because as to J. M. Bennett he was the principal debtor and not a co-surety with him; nor would the case have been different, if Jonathan M. Bennett had been his co-surety for he had voluntarily without the knowledge of P. W. and Hanson Bennett executed his bond for $2,100.00, the amount of their indebtedness, which they subsequently reduced by payments to $1,200.00, for which for a new consideration to himself, viz : the extension of the time of payment to twelve and eighteen months and two years, he executed the three notes of $400.00 each in discharge of the indebtedness of his principal to said company. These notes were the consideration for the release of J. M. Bennett, who having ing been so released and being no party to the new contract embodied in these notes, was neither a necessary nor a proper party to this suit, as he had no interest in the controversy.

The third and fourth assignment of error may be considered together. It will be observed, that neither the answers of Hezekiah Bennett, his own deposition, nor that of his principal, Hanson Bennett, call in question the fact, that, when the former executed his bond for $2,100.00 and his three notes of $400.00 each, these amounts were not then due from P. W. Bennett and Hanson Bennett, to The Singer Manufacturing Company. The evidence wholly fails to support the allegations of the answer of Hezekiah Bennett, that the plaintiff exhibited to him an account of sales made by Preston W. and Hanson Bennett or made to him any representations whatever to induce him to execute the bond or the notes, or that they "were executed under a misrepresentation of the account of sales and for a consideration having no value."

Hezekiah Bennett examined as a witness in his own behalf testifies, "that after the boys (P. W. and H. Bennett), sold machines for a long time, Jonathan M. Bennett came to his house and said that the boys had not paid up, and that he was afraid they would get into trouble, and that he (Hezekiah) had better execute his note to the company for about $2100.00, which he did and delivered it to Jonathan M. Bennett; that he told him the amount the company demanded, and he gave the note thinking the boys would pay it." The following question was propounded to Hezekiah Bennett by his counsel. "What influnces if any were brought to bear to induce you to execute the $2,100.00 note while your sons were still selling in the bonded territory, as you understood?" To which he answered: "Jonathan M. Bennett came up here and said the boys were behind about $2,100.00, and that they were talking about putting them in prison, and that I would better execute the note and I did so. Jonathan said the company was talking about putting them in prison. He said the company said the boys were behind about $2,100.00 but Jonathan himself advised me to execute the note. These facts induced me to execute the note. I had no idea when I gave this note that the boys had made sales out side the territory, or I would not have given it. I did not know that the boys had been instructed to sell outside of the territory, and Jonathan told me the boys were going to get into trouble, and that they were about to get into prison, and this is what induced me to sign and execute the note."

There is no evidence in this record, that any person made any threats, or that any other person than Jonathan M. Bennett had said, that the boys were about to get into prison or into any other kind of trouble in consequence of any thing they had done or had failed to do as the agents of said company. It is clear from the evidence, that P. W. and H. Bennett made payments on the note of $2,100.00 until it was reduced on November 11, 1876, to $1,200.00, after all credits claimed thereon had been allowed, for which sum Hezekiah Bennett then executed and delivered to the plaintiff's attorney the three notes of $400.00 each, and that in consideration of these notes his note or bond of $2,100.00 was surrendered to him in the presence of Hanson Bennett; and that

Hezekiah Bennett, who was only the surety of his sons P. W. and H. Bennett, was so well satisfied of the correctness of the whole transaction and with the ability and disposition of the boys to pay the same, that, when he executed the notes, he did not even require Hanson Bennett, whose debt he was then settling, to join him in the execution of the notes made in the discharge of this indebtedness.

These circumstances leave no doubt on our minds that P. W. and Hanson Bennett on November 11, 1876, were indebted to the company in the full amount of these notes; and it is not pretended, that any part of them has been in any manner since that time paid or discharged.

To avoid this liability Hezekiah Bennett in his answer alleges, that the sales made by P. W. and H. Bennett were "payable in notes taken by them on account of such sales, and that he tenders as payment, the following notes, to-wit: One signed by —— Williams and several others not known to said defendants, and also a list of claims for sewing machines sold out of the district amounting to $3,460.00 which were included in the notes claimed by the defendants. These allegations, denied by the general replication, are wholly unsupported by the evidence.

It is contended by appellant, that a large number of machines were sold by P. H. and Hanson Bennett outside of the counties, for which they were appointed agents, and that for the moneys received from such sales he was not liable as their surety on the bond executed to secure the faithful performance of their duties as such agents, and that the moneys specified in these notes of $400.00 each were the same moneys received by them from such sales in other counties. The condition of this $5,000.00 bond was as follows: "If the said P. W. and H. Bennett, shall well and faithfully perform their duties as such agents, and account for, pay over and deliver to said company all moneys, credits, notes, accounts, books, property and effects of every kind and nature whatsoever belonging to them (it) that may be intrusted to them or come into their possession, then this obligation to be void, otherwise to remain in full force and effect." According to the evidence of Hanson Bennett the total amount of sales was about $5,000.00, of which $1,865.00

including their commission of 35 *per cent,* was to persons living in Giles and Montgomery counties in Virginia. When these last mentioned sales were made, or how or when paid for, does not appear. Said Hanson Bennett examined as a witness for the defendants furnished a list of these outside sales without dates or times of payment, showing that after deducting their commissions, he and P. W. Bennett owed the company on that account $1,212.25 ; but there is no evidence, that in making their payments they made any distinction between this and any other money derived from sales, made within the counties, for which they were agents.

In answer to the question : "State if the three several bonds or notes executed by the said Hezekiah Bennett, embraced as their consideration the moneys arising out of sales within the bonded territory covered by the $5,000.00 bond," propounded by said defendant. Hanson Bennett answered : "I don't consider they do embrace the proceeds of the sales made within the bonded territory, as we paid them more money than the aggregate of sales made within the counties embraced in said bond, as well as several hundred dollars on sales made outside of the territory embraced in the *bond.*"

As the moneys from outside sales, were not kept separate from those derived from other sales, and as no distinction was made between them, when paid to the company, the reason is apparent, why the witness could not say, whence the money, which formed the consideration of the $400.00 notes, was derived. But because the payments to the company exceeded by several hundred dollars the aggregate of all sales made within the "bonded territory," "*he did not consider* that they embraced the proceeds of the sales made within that territory." This testimony is equally applicable to prove that the proceeds of all outside sales have been fully accounted for, and as a consequence thereof, the money mentioned in the notes must represent some portion of the proceeds of sales made within the "bonded territory," which still remains unaccounted for. If it can be used with equal effect to establish the truth of these two opposite hypotheses, it is clearly insufficient to establish or to exclude either of them.

Hanson Bennett further testified, that, after he and W. P. Bennett had pretty well canvassed the territory specified in

the bond, the company's agents, R. P. Beatty and C. S. Beatty, authorized them to sell machines outside of this territory. This testimony is not only uncorroborated, but is explicitly contradicted in every particular by the depositions R. P. and S. C. Beatty, who both testified, that hearing complaints from other agents, that P. W. and H. Bennett were selling machines outside of their territory, they informed them of the fact and warned them, that, if they did not disist from doing so, they would discontinue their agency; and C. S. Beatty filed as part of his deposition a copy of the following letter written and sent by him to them on this subject:

"OCTOBER 20, 1874.

"MESSRS. P. W. AND H. BENNETT, Newport, Va.:

"GENTS.—Our agent at Christiansburg, Mr. Hendry, writes us that your man Hamilton has again been in his territory, and that he, Mr. Hendry, lost the sale of two machines because of Mr. Hamilton offering machines at six and twelve months, and 'if that is not long enough, you can have more time.'

"We have given you to understand that you must keep in your own territory. We mean just what we say, and we do not again want Mr. Hendry to have occasion to make complaint to us of you and your men. Your bond reads that you may go in certain counties, and you are to understand that you must not canvass outside of those counties.

"In case any more complaints are made, we shall take such steps as will put an effectual stop to the cause.

"Your note of $382.25, due at Salem 20—23 October, has been sent for coll.

"Enclosed find In. of one Cor. N. F. Mach. shipped to your address, Millboro, to-day.

"Please sign and return duplicate In. and note and favor

"Very truly yours,

"THE SINGER M'F'G. Co.

"(Signed)        C. S. BEATTY, *Ag't R. P. B.*"

But whether we regard these sales as made within or outside of the territorial limits of their agency, the result will be the same. The sewing machines delivered by the company to P. W. and H. Bennett for sale either became their

property at a certain price less their commission of thirty-five *per cent.*, as soon as delivered to them, or they continued to be the property of the company in the hands of P. W. and H. Bennett, until they were sold. In the former case P. W. and H. Bennett would be indebted to the company for the price thereof less their commission; in the latter case the machines being the property of the company in the hands of said agents, when they sold the same, the money received therefor less their commissions was the money of the company in their hands. In the one case the machines themselves in the other the moneys received therefor less the agent's commissions were the property or moneys of the company in the agent's hands, and as such were expressly secured by the terms of the bond. Nor can this result be different, if the agents have sold machines outside of their territorial limits and received the price thereof. If the surety on their bond in that case could not be held responsible for the money so received from such sales, it could only be because the agents in selling outside of the limits of their agency had not failed well and faithfully to perform their duties as such agents. If by so doing the company had sustained any damages, the measure thereof would be the net value of the machines so sold outside of the territorial limits of such agency, and these damages would be the direct result of the failure or neglect of such agents to well and faithfully perform their duties as such agents, which are also embraced in the terms of their bond, for which Hezekiah Bennett as their surety was liable.

It is further argued by the appellants counsel, that by the "terms of the bond the note on Williams and others claimed in Hezekiah Bennett's answer, and proved by Hanson Bennett's deposition to have been received and receipted for, should have been credited" upon the notes of $400.00 each. The bond is entirely silent as to the manner, in which P. W. and H. Bennett were to pay the company for the machines; and where no other mode of payment is agreed upon, the debt or liability can be discharged only in money. The condition of the bond is as follows: "P. W. and H. Bennett, have entered into the employ of The Singer Manufacturing Company as agents for the sale of sewing machines, *and the*

*transaction of such other business as they* (it) *may entrust to then* in the counties of Highland, Bath, Allegahny, Botetourt, Rockbridge Craig, and Roanoke, State of Virginia." Under the terms of this appointment the company might probably have entrusted to the care of these agents such of its notes, credits, accounts, books, &c., against any of its other agents for settlement or collection, as it had entrusted to its agents, R. P. Beatty and C. S. Beatty, its claims against C. P. and H. Bennett. And whatever might be so entrusted to them was also secured by the terms of the bond; for it expressly provided that P. W. and H. Bennett should not only "well and faithfully perform their duties as *such agents* but also that they should account for and pay over and deliver to said company all moneys, credits, notes, accounts, books, property and effects of any and every kind and nature whatever belonging to *them* (that is to the company)that may be entrusted to them, or come into their possession." So far as appears from the record, the company never entrusted P. W. and H. Bennett with any of its moneys, credits, notes, accounts, books, property and effects except the sewing machines, which they received and sold. Of the moneys received for these and not paid over Hezekiah Bennett upon full settlement of these transactions in the presence of Hanson Bennett executed the three notes.

Was the company bound to receive in payment of the debt of P. W. and H. Bennett the notes taken by them for machines sold? We have seen that the terms of the bond do not require it. The only witness examined on this point was Hanson Bennett, who, if such had been the fact, could have proved it; but he does not pretend, that any such agreement was ever made, or that he ever claimed the right to discharge this debt by transferring such notes to the company. His statement is: " If the agent of the company had received of myself and P. W. Bennett negotiable notes, which we had taken for machines sold to various parties, it would have discharged their entire demand against us, but they refused to take them as payment. They took them and receipted us for them, but they were not paid when they became due, and they returned them to us protested." Who were the makers of these notes, what were their several amounts, or whether they have since been collected, does not appear.

On all these questions the record is silent; nor is it averred in the answer of Hezekiah Bennett or in his deposition or in that of Hanson Bennett, that these negotiable notes have not been collected, or that the makers thereof are insolvent, and there is no proof whatever that there ever was any note on ——Williams. There being no proof that Hezekiah Bennett is entitled to any other credit upon or set-off against said three notes, it was unnecessary to refer the cause to a commissioner, and the circuit court properly charged him with the payment of the amount of said notes.

. The only question remaining to be considered is: Was the deed made by Hezekiah Bennett and wife to Levi Bennett conveying to the latter all of the lands of the former for the consideration there mentioned fraudulent? Upon this question the evidence is overwhelmingly against the validity of the deed. The transaction is marked with almost every badge of fraud. The grantor is largely in debt; the grantee is his son; the lands conveyed are all the lands owned by the grantor; the conveyance renders the grantor hopelessly insolvent; the consideration is merely nominal and is secured to himself and wife; the possession, use, and apparent ownership of the land remain unchanged in the grantor, who subsequently with the consent of the grantee encumbers fifty acres of it for the benefit of a favored creditor of the grantor; and all these facts are fully known to the grantee, when the conveyance is made to him; and he allows all these allegations of the bill to be taken for confessed against him. ( *Hunter's Ex'ors* v. *Hunter*, 10 W. Va. 321; *Lockhard* and *Ireland* v. *Beckley*, 10 W. Va. 87; *White* v. *Perry*, 14 W. Va, 66; *Martin & Gilbert* v. *Rexroad*, 15 W. Va. 512; *Goshorn's Ex'or* v. *Snodgrass*, 17 W. Va. 717; *Knight* v. *Capito*, 23 W.Va. 639; *Hunters* v. *Waite*, 3 Gratt. 25. The fraudulent character of the said deed to Levi Bennett, was fully established, and the circuit court properly declared the same fraudulent and void as to the plaintiff's demand.

The decree of the circuit court of Lewis county rendered in this cause on March 12, 1884, is therefore affirmed with costs, and $30.00 damages to The Singer Manufacturing Company against the appellant.

AFFIRMED .