# CHARLESTON.

HAUPT *v.* VINT *et als.*

Submitted March 9, 1910. Decided February 14, 1911.

1.  EVIDENCE—*Parol Evidence—Varying Written Instruments.*
    In an action between original parties to a negotiable instrument, oral evidence is admissible to prove an agreement between or among them different from that indicated by the relative positions of their signatures on the paper.

2.  SAME.
    In such case, the written contract is incomplete and silent as to some of its terms, and the oral evidence supplying them is not inconsistent with the written portion thereof, and its admis-

sion not violative of the rule, inhibiting the alteration or variation of written instruments by such evidence.

3. CORPORATIONS—*Powers—Accommodation Indorsement.*

A manufacturing corporation cannot lend its credit by an accommodation endorsement or contract of suretyship or guaranty.

4. SAME—*Officers—Implied Powers.*

A manager of a corporation has no implied authority to sign its name as an accommodation endorser, surety or guarantor.

5. PRINCIPAL AND AGENT—*Signature of Another as Agent Without Authority—Liability.*

A person who signs the name of another to a contract, as agent of the latter, without authority to do so, is not personally liable on the contract as promisor or covenantor, but is liable, in an action of *assumpsit*, upon the implied warranty of his authority, or, in trespass on the case, for fraud and deceit.

6. CONSTRUCTION OF NEGOTIABLE INSTRUMENTS LAW.

A suggestion as to the construction of section 20 of the Negotiable Instruments Law.

Error to Circuit Court, Pocahontas County.

Action by J. C. Haupt against W. H. Vint, the De Ran Lumber Company, and others. Judgment for plaintiff, and defendant lumber company brings error.

*Reversed and Remanded.*

*L. M. McClintic* and *Price, Osenton & MsPeak,* for plaintiff in error.

POFFENBARGER, JUDGE:

The purpose of this writ of error is to test the soundness of a judgment on a negotiable note, in favor of the payee and against the maker thereof and an endorser.

The consideration of the note was a team of horses, purchased by the maker thereof, W. H. Vint. Before delivery of the note to the payee, the name of The DeRan Lumber Company was written on the back thereof. Haupt, the payee, then wrote his name on the back of it above that of the lumber company and discounted it at a certain bank. It was renewed some two or three times in the original form, and, having been protested for non-payment, was taken up from the bank by Haupt, who brought this action against Vint, The DeRan Lumber Company

·and J. J. DeRan, its manager, by whom the lumber company's endorsement was put on the note. There is some controversy in the briefs as to whether Haupt or The DeRan Lumber Company first endorsed the note, it being contended for the latter that the former is the first endorser. Tested by the paper itself, this is true, but oral evidence admitted proves that the lumber company first endorsed the original note. J. J. DeRan expressly says so. The last renewal, however, was probably endorsed first by Haupt. At least, there is evidence tending to prove this.

The declaration alleges that Vint made a certain note and subscribed his name thereto and thereby promised to pay to the plaintiff the sum of $400.00; and that "the said DeRan Lumber Company and the said J. J. DeRan before the maturity of the said note endorsed the same to the said W. H. Vint and this plaintiff and subscribed their names to the said endorsement." An endorsement by a stranger to the maker and payee of a note seems to be a legal impossibility. There might be such an endorsement by a third person to another third person established, as shown or indicated in *Burton* v. *Hansford,* 10 W. Va. 470, or possibly by a third person to the payee; but we do not well see how that relation can be established between a third person, on one side, and the payee and maker on the other. Evidently this is not what the pleader intended to say. His purpose, no doubt, was to declare against the maker and so-called endorsers as co-promisors, or against the maker as the promiser and the endorsers as guarantors, or the third party as an endorser to him only. As we are unable, however, to put this construction upon the terms used, we conclude that the declaration is very defective. Whether it is cured by the statute of jeofails, no demurrer having been interposed, we do not inquire, for the reason that the judgment must be reversed and the verdict set aside for lack of evidence.

For the same reason we leave unnoticed other alleged errors, no ground for which will likely appear in a new trial, if one shall occur.

Both the declaration and the proof show that The DeRan Lumber Company is a corporation. It is sued as such, and there is no proof of authority in J. J. DeRan, its manager, by

whom the endorsement was made, or any other person, to bind·
it by an accommodation endorsement, guaranty or suretyship,
nor evidence sufficient to establish an original promise by the
corporation. As a general rule, corporations cannot lend their
credit in the form of accommodation endorsements, suretyships
and guaranties. To fix such a liability upon a corporation, it
is necessary to establish, not only authority in the officer or
agent to execute the paper, but also power in the corporation
to bind itself in that way. This rule is universally applied to
banking, insurance, railroad, plank-road and other transporta-
tion companies, manufacturing companies and building and
loan associations. It would be useless to consume space here
in citing the decisions, declaring and applying this law. They
are collated in 10 Cyc. 1109; 7 A. & E. Enc. L. 788; Morawetz
Corp., sections 389, 423; Cook Corp., section 761; Clark Corp.,
section 184, p. 486.

As J. J. DeRan by whom the endorsement was made has
been made a defendant, it becomes necessary to determine, for
the purpose of a new trial, whether his lack of authority to
bind his principal makes him personally liable. Though it has
been held that a person who has signed the name of another to
a note or other contract without authority is liable thereon as
promisor or covenantor, *Edings* v. *Brown,* 1 Rich. Law (S. C.)
255, *Dusenbury* v. *Ellis,* 8 Wend. 3 Johns. Cas. 70, reason and
the weight of authority are to the contrary, and make him liable,
not on the instrument, as a party to it, but only as a warrantor
of the signature, against whom *assumpsit,* sounding in damages,
lies, or as a wrong doer, making him liable in trespass on the
case for fraud and deceit. *Ballot* v. *Talbott,* 16 Mass. 461;
*White* v. *Madison,* 26 N. Y. 117; *Dung* v. *Parker,* 52 N. Y. 499;
Clark & Skyles, Agency, section 575; 1 A. &. E. Enc. L. 1128;
31 Cyc. 1614-15, saying: "As to the ground upon which the
liability of an agent contracting for another without authority
rests, the authorities in the several states differ widely, nor is
it easy to reconcile the various decisions in the same state. In
some jurisdictions, particularly in the earlier cases, it is held
that an action may be maintained against the agent as principal
upon the contract itself, although it contains no apt words to
bind him personally, but only to bind the principal, upon the
theory that the contract must have been intended to bind some

one, if not the principal, then the agent. By the great weight of recent authority, however, this theory has been emphatically repudiated, and it is now generally held, more logically, that the agent cannot be held upon the contract unless it contains apt words to bind him personally, in the absence of which the only remedy is by an action for the breach of his implied warranty or an action for deceit if the circumstances warrant the latter remedy."

Change of this common law rule by the statute, known as the Negotiable Instruments Law, chapter 81 Acts of 1907, has been suggested, Clark & Skyles, Agency, section 575, Brannan N. I. L., p. 25, section 20; but, as the note was made in April, 1907, and the statute did not become effective until Jan. 1, 1908, it has no application. In view of the discussion we find in the text books and some decisions, concerning the question, we make the follownig observations by way of suggestion only, not as matter of decision:     Express terms of liability are not found in section 20 of that act. The suggestion stands only upon the phrase, "if he was duly authorized." Hence, if the act imposes such liability, it does so by implication only. The section, read in the light of the general purpose of the statute, namely, uniformity of negotiable instrument law, and the conflict in decisions of the several jurisdictions, imports intent to accomplish other results. In other words it deals primarily with a subject other than that of liability of a person professing to act as agent when he has no authority. It deals with the question of liability of an agent, having authority, but who has subscribed the name of his principal in a defective manner. To abolish the application of the theory of use of words as constituting only *descriptio personae,* when an agent, having authority, signs his own name, adding "agent for A. B." and the like, seems to be the real purpose of that section. Section 23 of the statute seems to deal with the question of personal liability on the part of the person signing as agent of another, in such manner as to make such other person liable as principal, if the person professing to act for him had authority, but had not. It says "Where a signature is forged or made without the authority of the person whose signature it purports to be, it is wholly inoperative and no right to retain the instrument or to give a discharge therefor or to enforce payment thereof against any party

thereto, can be acquired through or under such signature, unless the party against whom it is sought to enforce such right is precluded from setting up the forgery or want of authority." As we have seen, the authorities had been conflicting as to whether the agent could be held liable on the instrument, the weight of authority being in the negative. Was it not the plain purpose of the legislature to adopt the prevailing rule, subject to a limitation imposed by express or implied ratification, a subsequent guaranty or the like? The two sections must be read together, considered in the light of the general legislative purpose and harmonized. The implication suggested is not a necessary one. To adopt it would be the addition of something the legislature has not expressed simply because it may be supposed to be in the line of public policy, indicated by the statute. We must remember, however, that it is the province of the legislature not only to originate or adopt lines of policy, but also to prescribe means for their enforcement, and when it has prescribed certain measures for that purpose, there is a presumption that no others were intended. To add others, is, in my opinion, nothing short of judicial legislation.

In view of the contention that The DeRan Lumber Company has the unalterable position of second endorser, precluding liability to Haupt, by reason of the relation shown by the order of the signatures on the back of the note, that of Haupt being first, we deem it proper to settle this question for the purposes of a new trail, as the plaintiff may be able to prove an original promise. An agreement among the original parties to a negotiable instrument, contrary to that imported by the relation of the names on the paper may be deduced from the facts and circumstances, and it does not violate the rule inhibiting variation of a written agreement by parol evidence. On this question, there are two conflicting lines of decisions in several jurisdictions. *Young* v. *Sehon,* 53 W. Va. 127. What is sometimes called the "New York Rule," adhered to in Illinois, Minnesota, North Carolina, Indiana, Massachusetts, Texas, Tennessee and Rhode Island, precludes the introduction of such evidence, treating the endorsements as a complete written contract. In most of the other states, the paper is regarded as being silent as to the real contract among the original parties thereto, and the introduction of parol evidence to show what

that contract was is not regarded as being violative of the rule excluding parol evidence. In this state, *Burton* v. *Hansford,* 10 W. Va. 470, and *Willis* v. *Willis,* 42 W. Va. 622, adopt and apply this latter rule. The correctness of this statement, as to *Burton* v. *Hansford,* is challenged in the brief, but a careful examination of the opinion proves it to be correct. It is true Judge GREEN said, in the latter part of his opinion, "Had Hansford endorsed it with this understanding, (that it was not to be discounted), he would have been responsible as original promisor, if the payees chose to so hold him responsible, unless in the exercise of their discretion expressly reserved, the plaintiffs chose to endorse the notes first, and have them discounted. If this had been done they could not have held Hansford liable to them at all." But this is to be taken subject to this further conclusion expressed in an earlier part of the opinion: "I conclude that when a negotiable promissory note made payable to a particular person or order, is first endorsed by a third person, and then delivered to the payee, such endorser is *prima facie* an original promisor or grantor, as the payee may elect, or the payee may by endorsing his name above that of such third person, and transferring the note, make him a second endorser in the commercial sense. But the true nature of the transaction, and the understanding of the parties to it at the time, may be shown by parol proof, and such proof may destroy this right of election by the payee, and the third person backing such note may be held liable only as an original promisor, or as a grantor, or as an endorser, according to the nature of the transaction, and the original understanding of the parties to it." Fairly construed Judge GREEN's language means that the third person endorsing the note cannot be held by the payee at all, if the contract or agreement, as shown by the parol evidence, was that the endorsement was made for the purpose of discount and that the payee was to become first endorser. In other words, if the parol evidence is in harmony and exact accord with the agreement imported by the relation of the signatures, there can be no recovery by the payee. This accords with the statement of the rule by Mr. Justice Clifford, in *Ray* v. *Sampson,* 22 How. 341, saying: "But if the note was intended for discount, and he put his name on the back of it with the understanding of all the parties that his endorsement would be in-

operative until it was endorsed by the payee, he would then be liable only as second endorser in the commercial sense, and as such would clearly be entitled to the privileges which belong to such endoresrs." *Willis* v. *Willis,* cited, is not in conflict with this rule, for the reason that no contract variant from that indicated by the position of the signatures was either alleged or proven and the decision rests wholly upon the absence of such contract. The liability was fixed with nothing before the court indicating the nature of the contract except the paper itself bearing the signatures. As no injustice can possibly result from the application of this rule in a controversy between the original parties to a negotiable instrument, for the reason that in every instance it is possible to show, without inconvenience, the consideration for the note and the relation of the parties to the transaction represented by it, we unhesitatingly adopt and accept it, believing the contrary of the rule to be needlessly and unjustly technical. Upon well settled principles, the note and signatures upon it may be treated, in litigation between the original parties to it, as an incomplete contract and the matter shown by parol testimony as not inconsistent with it in the true sense of the term.

For the error in not setting aside the verdict, the judgment will be reversed, the verdict set aside and the case remanded for a new trial, with leave to amend the declaration.

*Reversed and Remanded.*