# CHARLESTON.

NORA HUFFMAN v. CHARLES E. MANLEY.

Submitted February 25, 1919.   Decided March 4, 1919.

1. BILLS AND NOTES—*Evidence—Accommodation Makers—Co-Sure-*
   *ties—Presumption.*

   As between accommodation makers of a promissory note the pre-
   sumption is that they are co-sureties, and as such liable to contri-
   bution to one of their number discharging the obligation, but this
   presumption may be rebutted by parol evidence showing that the
   one last signing was and is a surety for the prior accommodation
   makers, and not their co-surety.   (p. 505).

2. PRINCIPAL AND SURETY—*Implied Authority of Principal.*

   If one sign a note as surety and entrust it to his principal, he
   thereby gives the latter implied authority to obtain either addi-
   tional sureties or guarantors indefinitely until the note is fairly
   launched in the market as a security.   (p. 506).

3. SAME—*Stipulation Against Contribution.*

   One who signs as surety on such note may stipulate at the time
   of entering into the obligation that he will not be liable for con-
   tribution with other sureties who signed before him.   (p. 506).

4. SAME—*Stipulation—Extent of Suretyship.*

   One who thus signs such a note, at the request of the principal
   debtor, to enable him to discount it, may, without the knowledge
   of the prior surety, and without any agreement or understanding
   with him, stipulate with the principal debtor that he signs only
   as surety for the prior parties.   (p. 506).

5. SAME—*Stipulation by Surety—Contribution—Parol Evidence.*

   Such stipulation need not be in writing, and parol evidence is admissible to show an express contract to that effect, or such contract may be implied from facts and circumstances shown. (p. 506).

Appeal from Circuit Court, Marion County.

Suit by Nora Huffman against Charles E. Manley and others. Decree for defendant Manley, dismissing the bill, and plaintiff appeals.

*Affirmed.*

*James A. Meredith* and *M. W. Ogden,* for appellant.
*Harry Shaw,* for appellee.

RITZ, JUDGE:

Plaintiff brought this suit to compel contribution from the defendant Charles E. Manley upon the contention that he was a co-surety with her upon a note executed by her husband, herself, A. A. Hamilton, and the defendant Manley to Allison S. Fleming. It appears that on the 9th of December, 1910, D. Straud Huffman executed his note for one thousand dollars to Allison S. Fleming. The plaintiff, who is his wife, also signed this note, as likewise did the defendant A. A. Hamilton and the defendant Charles E. Manley. So far as the face of the paper is concerned they are all makers, and their signatures to the note are in the order above mentioned. The plaintiff's contention is that in fact and in truth D. Straud Huffman is the principal and the other three parties are his sureties, while the contention of the defendant Manley is that so far as he is concerned Huffman and his wife are the principals, and he and Hamilton are co-sureties for them. Huffman and Hamilton are insolvent. A judgment being obtained upon the note against all four of the parties, Mrs. Huffman was compelled to pay it, and brought this suit alleging the insolvency of her husband and of Hamilton, and asking that Manley be compelled to contribute one-half of the amount paid by her. The circuit court dismissed her bill finding that Manley was not her co-surety, but was a surety for her and her husband.

The facts appear without substantial conflict to be that Huffman procured this one thousand dollars for his own purposes, and that his wife was not a beneficiary therein; that she signed the note simply as surety to assist him in procuring the money, and that he told her at the time she signed it that Hamilton and Manley would also become sureties; that he then took the note to Hamilton and Manley, and upon the representation that he and his wife were procuring this thousand dollars to make some repairs and additions to their dwelling Hamilton and Manley signed it as sureties for Huffman and his wife. Huffman denies, of coure, that he made such representations to Manley and Hamilton, but it satisfactorily appears from the evidence that Manley refused to become a surety for Huffman alone, and the same appears from the testimony of Hamilton. It is true, Mrs. Huffman knew nothing about the arrangements that her husband had with Hamilton and Manley, nor did Hamilton and Manley have any understanding or agreement with Mrs. Huffman as to the manner in which they should be bound upon the note, whether as co-sureties with her, or as sureties for her and her husband. The contention is made by the appellant that inasmuch as Huffman is shown to be the principal in this transaction and the beneficiary thereof, the other three parties to the note, while they appear as makers, must be co-sureties, and are liable to contribution to the one discharging the obligation; while the contention of the appellee is that it may be true that Mrs. Huffman was only a surety for her husband as between them, but so far as he is concerned she and her husband were the principals; that his contract of suretyship was only to become surety for the husband and wife, and not for the husband alone. The appellant contends that this situation not appearing from the face of the paper, it cannot be shown in the absence of an agreement to which she was a party.

It is very well settled that where parties execute a note like this they are *prima facie* joint makers, but as between them they may show what the real understanding was, and what their real relation is. Of course, so far as the holder of the note is concerned, unless he discounts it with full

knowledge and with the understanding that some are sureties for the others, they are all joint makers and equally liable. This proposition is not controverted. In fact both of the parties to this suit are put to the necessity of introducing evidence *aliunde* to show that they are sureties, inasmuch as the face of the paper would make them both principals. But does the fact that Mrs. Huffman was, as between her and her husband, only surety necessarily make her a co-surety with Manley? There is no reason why an accomodation maker on a note cannot enter into an agreement with the principal to fix his liability in any way that he chooses, or that they may agree upon. *Prima facie* when it is shown, as it is shown here, that there was only one party principally liable for the debt, the others are co-sureties, but this presumption may be overcome by proving what the real contract was. Brant on Suretyship and Guaranty, § 291; 21 R. C. L., p. 948; 32 Cyc., 18; *Bulkeley* v. *House,* 62 Conn. 459; 21 L. R. A., 247 and note; *Singer Mfg. Co.* v. *Bennett,* 28 W. Va. 16; *Harrison* v. *Lane,* 5 Leigh 414; 27 Am. Dec. 607. But it is contended by Mrs. Huffman that even though Manley did sign his name to this note with the understanding that he was only surety for herself and her husband, instead of being a co-surety with her for her husband, she, not being a party to that understanding and agreement, could not be bound or affected thereby. This contention is not tenable. When Manley was asked by Huffman to sign his name to this note as surety he had a right to enter into an agreement with the party who had the note as to the nature of the obligation he was assuming. Mrs. Huffman signed her name to the paper and turned it over to her husband. She put it in his power and conferred upon him authority to get such other or additional sureties as might be necessary, or that he might be advised would be necessary in order to procure the money upon the note, and it necessarily follows that he could make such contracts with the parties so becoming surety as would enable him to procure their signatures to the note. If Mrs. Huffman desired to prevent herself from becoming liable in any other way than as co-surety with Hamilton and Manley, she should not have entrusted her husband with this paper. She having singed the paper, it devolves upon her, if she would

limit her liability in the way she now seeks to do, to see that the parties whose names were sought and procured signed it as co-sureties with her, in accordance with her understanding with her husband. She was the one who first signed this paper and put it in the power of her husband by reason of having her signature thereon to procure the signatures of the other two parties. One of them declined to sign the paper as surety for her husband. While she did not know this, that fact can make no difference so far as her relation to the note was concerned. Her husband might have taken this note and procured its discount without procuring any other signatures after her own thereon, and she would be bound unless she could show that the party taking the note knew that she was not to be bound unless other sureties joined her thereon. Instead of doing this the party beneficially interested procured others to become surety for him and his wife instead of discounting the note. Suppose Manley in this case, instead of becoming surety, had discounted this note himself, Mrs. Huffman could not say that she signed this note with the understanding that Manley was to become surety, and therefore that she is not bound thereon except as his co-surety, unless she could say that he had full knowledge of such an understanding. *Singer Mfg. Co.* v. *Bennett,* 28 W. Va. 16; 32 Cyc. 18; *Craythorne* v. *Swinburne,* 14 Vesey, Jr., 160; *Robertson* v. *Deatherage,* 82 Ill. 511; *Bowser* v. *Rendell,* 31 Ind. 128; *Bobbitt* v. *Shryer,* 70 Ind. 513; *Baldwin* v. *Fleming,* 90 Ind. 177; *Houck* v. *Graham,* 123 Ind. 277; *Wright* v. *Garlinghouse,* 27 Barbour 474; *Oldham* v. *Broom,* 28 Ohio St. 41; *Keith* v. *Goodwin,* 31 Vt. 268; *Adams* v. *Flannagan,* 36 Vt. 400; *Sherman* v. *Black,* 49 Vt. 198; *Chapeze* v. *Young,* 87 Ky. 476; *Goetchius* v. *Calkins,* 46 Mich. 328; *Hunt* v. *Chambliss,* 7 Sm. & M. (Miss.) 532; *Chapman* v. *Garber,* 46 Neb. 16.

Perceiving no error in the decree complained of the same will be affirmed.

*Affirmed.*