C. G. Davis *v.* D. L. Davis *et al.*

(No. 9693)

Submitted October 2, 1945.  Decided November 27, 1945.

*Stathers, Stathers & Cantrall* and *Mary Frances Brown,* for plaintiff in error.

*Powell, Clifford & Jones,* for defendants in error.

KENNA, JUDGE:

To a judgment in favor of the defendants D. L. Davis and Rose Davis and against C. G. Davis, plaintiff in a notice of motion proceeding in the Circuit Court of Harrison County, this writ of error was granted. The proceeding was upon a promissory note in the sum of $650.00, the balance due with interest to August 7, 1943, the date of the notice, being $606.15. The note described in the notice was signed by D. L. Davis and Rose Davis, payable to C. G. Davis and given to Glenville Banking & Trust Company in renewal of like paper held by that bank and negotiated there by the makers and endorsers of the note sued on, the notice alleging that after the makers had refused to meet the note at maturity the endorser, C. G. Davis, had paid to the holder—bank, the amount due thereon. The defendants appeared, filed their counter affidavit accompanied by a plea of the general issue, and a special plea of accord and satisfaction. It is as to the issue raised by the latter plea and to the fact that the trial court permitted evidence to be introduced by the defendants tending to establish an oral understanding between them and C. G. Davis prior to the negotiation of the original note of which the note in question is the final renewal, that the assignments of error principally turn. In order to understand the nature of the oral testimony having to do with the assignments of error it will be necessary to recount in some detail the circumstances leading up to, and at the time of, the negotiation of the original paper at the bank in the early spring of 1932, when the parties to this notice obligated themselves in the sum of $1,030.00.

On the third day of February, 1932, D. L. Davis and C. G. Davis became the accommodation endorsers of French Gainer on a note for $600.00 payable to J. D. Jones in thirty days which, not being satisfied when due, was immediately reduced to judgment. Shortly thereafter D. L. Davis discovered that a proceeding had been brought to subject certain land owned by him in Harrison County to the lien of this judgment. He at once

got in touch with his brother, C. G. Davis, to see if arrangements could not be made to meet the judgment. His brother advised him to come to Glenville where he thought money to satisfy the judgment could be borrowed from an individual. D. L. Davis went to Glenville and found that the individual loan could not be procured. He and his brother then went to the Glenville Banking & Trust Company where they consulted Mr. Howard Brannon, Cashier.

D. L. Davis states positively that during the course of these negotiations at the Glenville Banking & Trust Company he and C. G. Davis agreed orally that they would be equally liable for the sum that they were borrowing for the purpose of retiring the Jones judgment in full.

The bank agreed to let them have the money, but due to the fact that C. G. Davis was a resident of Gilmer County, and that D. L. Davis and Rose Davis, his wife, who apparently then held title to land formerly vested in her husband and was therefore required to sign, resided in Harrison County and the bank at that time was loaning only to the residents of Gilmer County, Mr. Brannon informed them that the proper way to handle the transaction would be for D. L. Davis and Rose, his wife, to execute the note as joint makers payable to the order of C. G. Davis, a resident of Gilmer County, who could then endorse it and negotiate it at the bank; this was done. C. G. Davis denies that he entered into an agreement to become equally liable with D. L. Davis.

C. G. Davis does not contend that he contributed to the curtailment of the original note given Glenville Banking & Trust Company. D. L. Davis, on the other hand, says that he not only reduced the liability to the amount represented by the note sued on, but that he sent two checks, one for fifty and one for thirty-five dollars, to C. G. Davis to be applied, which C. G. Davis appropriated to his own use. D. L. Davis and Rose Davis having refused to renew the note after reducing its principal to

less than one-half of the original obligation, counting interest, C. G. Davis on June 5, 1942, as he expressed it, "took it up". A short time thereafter he employed a Glenville attorney to recover from D. L. Davis and Rose Davis the amount that he had paid to the Glenville Banking & Trust Company in satisfaction of the obligation to it.

D. L. Davis being notified by the attorney that he held the note for collection against him and Rose Davis, his wife, on February 10, 1943, went to Glenville for the purpose of meeting C. G. Davis at the attorney's office for a conference, taking with him three checks to which he stated C. G. Davis had forged his name in 1906 and 1907. The conference on February 10 was quite violent, D. L. Davis threatening prosecution because of the alleged old forgeries and resorting to violent profanity in stating what he thought of the conduct of C. G. Davis. Nothing having been accomplished on the tenth, D. L. Davis returned on the eleventh and discussed matters more calmly with his brother with the result that C. G. Davis gave him a check for $100.00 now marked "to apply on checks" but according to D. L. Davis not so marked when it came into his possession as payee. C. G. Davis now contends that this check was given under coercion and in fear of prosecution. D. L. says that it was given in complete settlement of their entire affairs, including the note sued on. Its payment was not stopped.

The three checks claimed to be forgeries are but remotely connected with this controversy, C. G. asserting that they were given by his brother at a time when they were partners in the lumber business and he in charge of purchases, D. L. denying this and stating that the partnership preceded the dates of the checks by several years. Its relevancy is doubtful, but it apparently did no harm.

Persons with the same interest under the terms of a contract in writing where the paper does not expressly show their relationship are permitted to prove by parol

that relationship and their responsibility as between themselves in a proceeding in which that becomes an issue. For example: Two partners who are equally bound by the terms of an agreement in writing with "A" may show by parol, not as a defense against a claim of "A", but in a proceeding to settle as between themselves, that their interests and obligations in the contract with "A" are as one to four or other agreed ratio. That principle has been applied to promissory notes and our case of *Haupt* v. *Vint*, 68 W. Va. 657, 70 S.E. 702, 34 L. R. A. (N.S.) 518, is one of the country's leading cases applying to it. For a general discussion see 8 Am. Jur. 659 and 20 Am. Jur. 980. For citations see 65 A. L. R. 822. In the first syllabus of the *Haupt* case this Court held:

> "In an action between original parties to a negotiable instrument, oral evidence is admissible to prove an agreement between or among them different from that indicated by the relative positions of their signatures on the paper."

The principle there laid down follows the line of cases that regard paper as being silent concerning the relationship in fact existing as between the original parties. The circumstances that gave rise to the *Haupt* case arose before the adoption of the Uniform Negotiable Instruments Act in this State, as did those of our earlier case of *Burton* v. *Hansford*, 10 W. Va. 470, 27 Am. Rep. 571. However, the cases of *First National Bank* v. *Freeman*, 83 W Va. 477, 98 S.E. 558, and *Huffman* v. *Manley*, 83 W. Va. 503, 98 S.E. 613, both hold the same way and followed the adoption of that Act. In *Federal Savings & Trust Co.* v. *Davis*, 104 W. Va. 235, 237, 139 S.E. 703, Judge Hatcher, speaking for the Court, says that parol evidence is admissible to show lack of consideration as against a person not a holder in due course and cites the *Huffman* case with approval.

The case of *Capital City Bank* v. *Foster*, 112 W. Va. 520, 165 S.E. 802, relied upon by the plaintiff in error, holds that a parol agreement as between the maker and the payee fixing the time of payment different from that

plainly stated upon the face of the paper may not be shown as between the original parties. Clearly this holding is not a departure from the principle announced in the *Haupt* case and others.cited because the time of payment is not a matter upon which a negotiable note is silent. The relationship between the original parties, under our cases, is. Parol cannot determine the former; it can the latter.

As to the assignment of error based upon the defendant's plea of accord and satisfaction and that such a settlement must be based upon a legal consideration, we can say only that in our opinion under the showing in this record the issue raised by the plaintiff was properly submitted to the jury and that if their verdict was based upon that issue there is sufficient evidence to support it. Here we have no special interrogatories to determine the exact nature of the verdict. Under our cases accord and satisfaction may be shown under the general issue or it may be specially pleaded.

We have carefully examined the assignment based upon the refusal to give plaintiff's Instructions Numbers Four, Six and Seven and the giving of defendant's Instructions Numbers One and Two and have concluded that the refusal of the plaintiff's Instructions was in each instance justified for the reason that they did not conform to the proof. The defendant's Instructions Numbers One and Two were quite lengthy and contained a resume' of the evidence upon the defendant's theory. A discussion of the objections made by the plaintiff thereto would involve a great deal of detail and we believe that it is sufficient to say that upon examination we have found them nonprejudicial.

The judgment of the Circuit Court of Harrison County is therefore affirmed.

*Affirmed.*